

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-1998

# Whiteford v. Reed

Precedential or Non-Precedential:

Docket 97-3652

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Whiteford v. Reed" (1998). *1998 Decisions.* Paper 220.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/220

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-3652

JOHN K. WHITEFORD, M.D.
Appellant

v.

JOHN REED, Director of the Professional Liability
Catastrophic Loss Fund; DANIEL KIMBALL, JR., M.D.,
Chairman of the Pennsylvania State Board of Medicine;
GERALD SMITH, ESQ., Counsel for the State Board of
Medicine, Commonwealth of Pennsylvania

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 97-cv-01940)

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 17, 1998

BEFORE: BECKER, Chief Judge, STAPLETON and WEIS,
Circuit Judges

(Opinion Filed September 9, 1998)

        John K. Whiteford
        3245 Miracle Drive
        Murrysville, PA 15668
        Appellant, Pro Se

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Whiteford appeals the district court's dismissal of his complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Whiteford argues that Rooker-Feldman is inapplicable because no state court addressed the merits of his claims. We have jurisdiction under 28 U.S.C. S 1291 because the district court's dismal for lack of subject matter jurisdiction is a "final order." Application of the Rooker-Feldman doctrine is a question of federal subject matter jurisdiction over which we exercise plenary review. Gulla v. North Strabane Township, 1998 WL 294013, *1 (3d Cir. 1998). For the reasons that follow, we conclude that Rooker-Feldman does not apply in this case. Accordingly, we will reverse and remand the case for further consideration by the district court.

I.

Whiteford, a Pennsylvania physician, filed suit in the United States District Court for the Western District of Pennsylvania alleging that Pennsylvania's Health Care Services Malpractice Act ("Act") violates several of his constitutional rights. 40 Pa. Cons. Stat. Ann. S 1301.701 (West 1998). The Act, enacted in response to an apparent medical malpractice insurance crisis in 1975, requires health care providers covered by the Act to carry minimum malpractice insurance ("basic coverage"). 40 Pa. Cons. Stat. Ann. 1301.701(a)(1)(i). In addition, the Act establishes the Medical Professional Liability Catastrophe Loss Fund (the "Fund"), an executive agency of the Commonwealth of Pennsylvania1. The Fund was created:

_____

1. Id. S 1301.701(d). Originally, the Act also included a dispute resolution
section which established arbitration panels with "original exclusive jurisdiction" over medical malpractice claims and limited attorney's fees. This system was designed to reduce the costs of litigating malpractice claims and was as a complement to the Fund. The Pennsylvania Supreme Court, however, declared the Act's dispute resolution component unconstitutional in Heller v. Frankston, 475 A.2d 1291, 1294 (Pa. 1984).

for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability against such health care provider as a defendant or additional defendant to the extent such health care provider's share exceeds its basic coverage in effect at the time of the occurrence.

Id. The Fund is primarily financed through the levying of annual surcharges upon health care providers "entitled to participate" in the fund. Id. S 1301.701(e). Notably, the Act also authorizes the levying of emergency surcharges in the event that the Fund's assets are insufficient to satisfy all claims in the preceding claims period plus the Fund's expenses. S 1301.701(e)(9).

In 1995, the Fund was operating under a $107 million deficit. To deal with this deficit, the Fund imposed the first emergency surcharge in the Fund's history. Generally, the emergency surcharges amounted to several thousand dollars per physician. Appellant Whiteford did not pay his 1995 emergency surcharge.

The Act and applicable regulations provide two major consequences for failure to pay surcharges. First, non-paying health care providers are no longer "covered by the Fund in the event of loss." 31 Pa. Code S 242.17(b). Second, non-paying health care providers face possible revocation or suspension of their licenses. 40 Pa. Cons. Stat. Ann. S 1301.701(f).

Upon determining that Whiteford had failed to pay his 1995 emergency surcharge, the Fund initiated formal administrative proceedings against Whiteford including a hearing held on October 26, 1996.2 At the hearing, Whiteford admitted to his failure to pay and presented an affirmative defense that the Fund surcharges violated his constitutional rights. Additionally, Whiteford informed the

_____

2. Whiteford filed an action in district court seeking a preliminary injunction to prevent the administrative proceedings. The district court declined to exercise its jurisdiction on the basis of abstention, and this court affirmed.

3

hearing officer that he was no longer carrying medical malpractice insurance as required by the Act. 40 Pa. Cons. Stat. S 1301.701(a). The hearing examiner declined to entertain the constitutional arguments, suspended Whiteford's license for 12 days and imposed a $685fine. Whiteford petitioned the State Board of Medicine ("Board") for review of the hearing examiner's decision under 40 Pa. Cons. Stat. Ann. S 1301.905(a). The Board similarly refused to consider Whiteford's constitutional challenges, affirmed the hearing examiner's decisions and increased the suspension to 14 days and the fine to $1,000. Whiteford petitioned the Commonwealth Court for review of the Board's decision, but his petition was dismissed, without consideration of his various constitutional claims, because Whiteford's petition contained "numerous substantial errors which impair[ed the court's] ability to conduct a meaningful review." (Appendix A-3). The Pennsylvania Supreme Court denied Whiteford's petition for appeal. Whiteford v. Commonwealth, 702 A.2d 1063 (Pa. 1997).

Whiteford then filed this action in the Western District of Pennsylvania claiming that the suspension of his license and imposition of the fine, as well as the Act generally, violated his constitutional rights.3 The district court dismissed Whiteford's complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine without considering his constitutional claims. In dismissing Whiteford's action under Rooker-Feldman the district court stated:

> When a plaintiff seeks to litigate a claim in federal court, the existence of a state court judgment in another case bars the federal proceeding under Rooker-Feldman when entertaining the federal court claim would be the equivalent of an appellate review of that order.

(App. B3). The district court was correct in its characterization of the Rooker-Feldman doctrine, however,

_____

3. Whiteford claimed violations of due process, equal protection, the right to work, and that the Fund and surcharge constituted an illegal taking, bill of attainder and an arbitrary mandate.

4

we conclude that the court incorrectly applied the doctrine in this case.

II.

"Under 28 U.S.C. S 1257, state court litigants who have appealed an adverse judgment through the state court system may seek review in the United States Supreme Court; the lower federal courts [however] may not sit in direct review of the decisions of a state tribunal." Gulla v. North Strabane Township, 1998 WL 294013, *2 (3d Cir. 1998) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). "Under the Rooker-Feldman doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with a state adjudication." Id. (citing FOCUS v. Allegheny County Crt. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996).

> In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. Accordingly, to determine whether Rooker-Feldman bars [a] federal suit requires determining exactly what the state court held . . . If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.

FOCUS, 75 F.3d at 840. The Rooker-Feldman doctrine has been interpreted to apply to the decisions of lower state courts. In re General Motors Corp. Pick Up Truck Fuel Tank Prod's Liability Litigation, 134 F.3d 133, 143 (3d Cir. 1998).

The state court dismissed Whiteford's appeal of the Board's decision because Whiteford's petition contained "numerous substantial errors which impair[ed the court's] ability to conduct a meaningful review." (App. A3). Thus, the court held that he had violated Pennsylvania's rules of appellate procedure. Pa. R.A.P 2114-117. Whiteford's federal action requested the district court to determine

5

whether the Act's surcharge provisions violated his federal constitutional rights. His federal claims did not require the district court "[to] determin[e] that the state court's decision [was] wrong or [to] void the state court's ruling." FOCUS, 75 F.3d at 840. The district court was not requested to interpret Pennsylvania's rules of appellate procedure, it was asked to interpret the Constitution. Rooker-Feldman does not preclude the district court from exercising its jurisdiction in this manner.

Moreover, this court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then Rooker-Feldman does not deprive the federal court of jurisdiction. See Gulla, 1998 WL 294013, at *4; E.B. v. Verniero, 119 F.3d 1077, 1091 (3d Cir. 1997) (noting that if state court had not decided merits of plaintiff's claim, then Rooker-Feldman would not bar federal action). For instance, in Gulla the plaintiffs brought a constitutional challenge in state court to a municipality's decision regarding subdivision of property adjacent to their own. Gulla, 1998 WL 294013, at *1. The state court dismissed plaintiffs' action because it concluded that they lacked standing under state law. Id. Plaintiffs then filed a federal action alleging constitutional violations. This court determined that Rooker-Feldman was inapplicable:

> [W]e conclude that the Gullas are not precluded from bringing their federal claims because the state court could not and did not adjudicate the merits of their constitutional claims. Rather, the state court noted that the Gullas lacked standing to raise their constitutional claims . . . Since the Gullas could not obtain an adjudication of their claims in state court, they are not precluded from raising their constitutional claims in the federal forum.

Id. at *5. Similarly, Whiteford could not obtain an adjudication of his constitutional claims in state court and Rooker-Feldman does not preclude him from seeking review in federal court.

III.

In sum, we conclude that the district court erred when it dismissed Whiteford's complaint under the Rooker-Feldman

doctrine. We will reverse and remand so that the district court may consider his claims.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit