155 F.3d 671
 John K. WHITEFORD, M.D., Appellant,
v.
John REED, Director of the Professional Liability
Catastrophic Loss Fund; Daniel Kimball, Jr., M.D., Chairman
of the Pennsylvania State Board of Medicine; Gerald Smith,
Esq., Counsel for the State Board of Medicine, Commonwealth
of Pennsylvania.
 No. 97-3652.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant to Third Circuit LAR 34.1(a) July 17, 1998.
Decided Sept. 9, 1998.
 
 John K. Whiteford, Murrysville, PA, Appellant, Pro Se
 Before: BECKER, Chief Judge, STAPLETON and WEIS, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge.
 
 
 1
 Whiteford appeals the district court's dismissal of his complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Whiteford argues that Rooker-Feldman is inapplicable because no state court addressed the merits of his claims. We have jurisdiction under 28 U.S.C. § 1291 because the district court's dismal for lack of subject matter jurisdiction is a "final order." Application of the Rooker-Feldman doctrine is a question of federal subject matter jurisdiction over which we exercise plenary review. Gulla v. North Strabane Township, 146 F.3d 168, 170-71 (3d Cir.1998). For the reasons that follow, we conclude that Rooker-Feldman does not apply in this case. Accordingly, we will reverse and remand the case for further consideration by the district court.
 
 I.
 
 2
 Whiteford, a Pennsylvania physician, filed suit in the United States District Court for the Western District of Pennsylvania alleging that Pennsylvania's Health Care Services Malpractice Act ("Act") violates several of his constitutional rights. 40 Pa. Cons.Stat. Ann. § 1301.701 (West 1998). The Act, enacted in response to an apparent medical malpractice insurance crisis in 1975, requires health care providers covered by the Act to carry minimum malpractice insurance ("basic coverage"). 40 Pa. Cons.Stat. Ann. 1301.701(a)(1)(i). In addition, the Act establishes the Medical Professional Liability Catastrophe Loss Fund (the "Fund"), an executive agency of the Commonwealth of Pennsylvania.[1] The Fund was created:
 
 
 3
 for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability against such health care provider as a defendant or additional defendant to the extent such health care provider's share exceeds its basic coverage in effect at the time of the occurrence.
 
 
 4
 Id. The Fund is primarily financed through the levying of annual surcharges upon health care providers "entitled to participate" in the fund. Id. § 1301.701(e). Notably, the Act also authorizes the levying of emergency surcharges in the event that the Fund's assets are insufficient to satisfy all claims in the preceding claims period plus the Fund's expenses. § 1301.701(e)(9).
 
 
 5
 In 1995, the Fund was operating under a $107 million deficit. To deal with this deficit, the Fund imposed the first emergency surcharge in the Fund's history. Generally, the emergency surcharges amounted to several thousand dollars per physician. Appellant Whiteford did not pay his 1995 emergency surcharge.
 
 
 6
 The Act and applicable regulations provide two major consequences for failure to pay surcharges. First, nonpaying health care providers are no longer "covered by the Fund in the event of loss." 31 Pa.Code § 242.17(b). Second, non-paying health care providers face possible revocation or suspension of their licenses. 40 Pa. Cons.Stat. Ann. § 1301.701(f).
 
 
 7
 Upon determining that Whiteford had failed to pay his 1995 emergency surcharge, the Fund initiated formal administrative proceedings against Whiteford including a hearing held on October 26, 1996.[2] At the hearing, Whiteford admitted to his failure to pay and presented an affirmative defense that the Fund surcharges violated his constitutional rights. Additionally, Whiteford informed the hearing officer that he was no longer carrying medical malpractice insurance as required by the Act. 40 Pa. Cons.Stat. § 1301.701(a). The hearing examiner declined to entertain the constitutional arguments, suspended Whiteford's license for 12 days and imposed a $685fine. Whiteford petitioned the State Board of Medicine ("Board") for review of the hearing examiner's decision under 40 Pa. Cons.Stat. Ann. § 1301.905(a). The Board similarly refused to consider Whiteford's constitutional challenges, affirmed the hearing examiner's decisions and increased the suspension to 14 days and the fine to $1,000. Whiteford petitioned the Commonwealth Court for review of the Board's decision, but his petition was dismissed, without consideration of his various constitutional claims, because Whiteford's petition contained "numerous substantial errors which impair[ed the court's] ability to conduct a meaningful review." (Appendix A-3). The Pennsylvania Supreme Court denied Whiteford's petition for appeal. Whiteford v. Commonwealth, 549 Pa. 731, 702 A.2d 1063 (1997).
 
 
 8
 Whiteford then filed this action in the Western District of Pennsylvania claiming that the suspension of his license and imposition of the fine, as well as the Act generally, violated his constitutional rights.[3] The district court dismissed Whiteford's complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine without considering his constitutional claims. In dismissing Whiteford's action under Rooker-Feldman the district court stated:
 
 
 9
 When a plaintiff seeks to litigate a claim in federal court, the existence of a state court judgment in another case bars the federal proceeding under Rooker-Feldman when entertaining the federal court claim would be the equivalent of an appellate review of that order.
 
 
 10
 (App.B3). The district court was correct in its characterization of the Rooker-Feldman doctrine, however, we conclude that the court incorrectly applied the doctrine in this case.
 
 II.
 
 11
 "Under 28 U.S.C. § 1257, state court litigants who have appealed an adverse judgment through the state court system may seek review in the United States Supreme Court; the lower federal courts [however] may not sit in direct review of the decisions of a state tribunal." Gulla v. North Strabane Township, 146 F.3d 168, 170 (3d Cir.1998) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). "Under the Rooker-Feldman doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with a state adjudication." Id. (citing FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir.1996)).
 
 
 12
 In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. Accordingly, to determine whether Rooker-Feldman bars [a] federal suit requires determining exactly what the state court held ... If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.
 
 
 13
 FOCUS, 75 F.3d at 840. The Rooker-Feldman doctrine has been interpreted to apply to the decisions of lower state courts. In re General Motors Corp. Pick-Up Truck Fuel Tank Prod's Liability Litigation, 134 F.3d 133, 143 (3d Cir.1998).
 
 
 14
 The state court dismissed Whiteford's appeal of the Board's decision because Whiteford's petition contained "numerous substantial errors which impair[ed the court's] ability to conduct a meaningful review." (App.A3). Thus, the court held that he had violated Pennsylvania's rules of appellate procedure. Pa. R.A.P. 2114-117. Whiteford's federal action requested the district court to determine whether the Act's surcharge provisions violated his federal constitutional rights. His federal claims did not require the district court "[to] determin[e] that the state court's decision [was] wrong or [to] void the state court's ruling." FOCUS, 75 F.3d at 840. The district court was not requested to interpret Pennsylvania's rules of appellate procedure, it was asked to interpret the Constitution. Rooker-Feldman does not preclude the district court from exercising its jurisdiction in this manner.
 
 
 15
 Moreover, this court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then Rooker-Feldman does not deprive the federal court of jurisdiction. See Gulla, 146 F.3d at 172-73; E.B. v. Verniero, 119 F.3d 1077, 1091 (3d Cir.1997) (noting that if state court had not decided merits of plaintiff's claim, then Rooker-Feldman would not bar federal action). For instance, in Gulla the plaintiffs brought a constitutional challenge in state court to a municipality's decision regarding subdivision of property adjacent to their own. Gulla, 146 F.3d at 170. The state court dismissed plaintiffs' action because it concluded that they lacked standing under state law. Id. Plaintiffs then filed a federal action alleging constitutional violations. This court determined that Rooker-Feldman was inapplicable:
 
 
 16
 [W]e conclude that the Gullas are not precluded from bringing their federal claims because the state court could not and did not adjudicate the merits of their constitutional claims. Rather, the state court noted that the Gullas lacked standing to raise their constitutional claims ... Since the Gullas could not obtain an adjudication of their claims in state court, they are not precluded from raising their constitutional claims in the federal forum.
 
 
 17
 Id. at 173. Similarly, Whiteford could not obtain an adjudication of his constitutional claims in state court and Rooker-Feldman does not preclude him from seeking review in federal court.
 
 III.
 
 18
 In sum, we conclude that the district court erred when it dismissed Whiteford's complaint under the Rooker-Feldman doctrine. We will reverse and remand so that the district court may consider his claims.
 
 
 
 [1]
 Id. § 1301.701(d). Originally, the Act also included a dispute resolution section which established arbitration panels with "original exclusive jurisdiction" over medical malpractice claims and limited attorney's fees. This system was designed to reduce the costs of litigating malpractice claims and was as a complement to the Fund. The Pennsylvania Supreme Court, however, declared the Act's dispute resolution component unconstitutional in Heller v. Frankston, 504 Pa. 528, 475 A.2d 1291, 1294 (1984)
 
 
 [2]
 Whiteford filed an action in district court seeking a preliminary injunction to prevent the administrative proceedings. The district court declined to exercise its jurisdiction on the basis of abstention, and this court affirmed
 
 
 [3]
 Whiteford claimed violations of due process, equal protection, the right to work, and that the Fund and surcharge constituted an illegal taking, bill of attainder and an arbitrary mandate