**Roy F. SUTTON, Plaintiff,**

v.

**Ronald W. SUTTON, individually and as Personal Representative of the Estate of Co–Trustee Loretta E. Sutton, et al., Defendants.**

**Civil Action No. 99–573 (JBS).**

United States District Court,
D. New Jersey.

Oct. 13, 1999.

Roy F. Sutton, Galloway Township, NJ, Plaintiff pro se.

Frederic L. Shenkman, Cooper Perskie April Niedelman Wagenheim & Levenson, Atlantic City, NJ, for Defendants Ronald W. Sutton and Estate of Loretta E. Sutton, Frederic L. Shenkman, and Estate of Roy C. Sutton.

Steven J. Brog, Perskie Nehmad & Perillo, P.C., Atlantic City, NJ, for Defendant Philip J. Perskie.

Jeffrey D. Light, Goldenberg, Mackler, Sayegh & Mintz, Atlantic City, NJ, for Defendant Goldenberg, Mackler, Sayegh & Mintz.

Susan N. Shirk, Atlantic City Solicitor's Office, Atlantic City, NJ, for Defendants City of Atlantic City and Alcoholic Beverage Com'rs (Sidney Magen, Yvonne Preston, and Sidney Trusty).

George L. Seltzer, Margate, NJ, Defendant pro se.

## OPINION

SIMANDLE, District Judge.

The instant case arises from a series of transactions and various lawsuits dating back to 1985 and it requires this court to explore the limitations upon its ability to entertain newly pleaded federal claims relating to a seemingly endless series of matters previously litigated in the state courts. As discussed herein, all of the claims and issues within this have been, or could have been, decided in the three previous federal lawsuits and other state court actions that this estate debate has engendered. Pro se plaintiff Roy F. Sutton filed this lawsuit against Ronald W. Sutton, individually and as personal representative of the Estate of Co–Trustee Loretta E. Sutton; Philip J. Perskie, Esq.; Goldenberg Mackler Sayegh & Mintz, a PC ("Goldenberg"); Frederic L. Shenkman, Esq.; George L. Seltzer, Esq.; City of Atlantic City, by and through Sidney Magen, Yvonne Preston, Sidney Trusty ("the Alcoholic Beverage Commissioners" or "ABC Commissioners"); and the Estate of Roy C. Sutton ("the Estate"). According to the Complaint, filed February 8, 1999,

* defendants Ronald and Loretta Sutton ("the Co–Trustees"), Perskie, Goldenberg, Shenkman, and Seltzer, conducted the affairs of the Estate as a racketeering enterprise that has violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.;*

* the Co–Trustees, together with Perskie, Goldenberg, Shenkman, and Seltzer conspired "to maintain ... control of [ ] the Estate, through a pattern of racketeering activity such as mail fraud and retaliation against a victim, within the meaning of" 18 U.S.C. § 1962(d);

* defendants City of Atlantic City, the ABC Commissioners, Ron Sutton, the Estate of Co–Trustee of Loretta Sutton, Goldenberg, and Shenkman are liable under 42 U.S.C. § 1983 for acting under color of state law to deprive him of his property right in a liquor license (or, in the alternative, that the allegations underlying this claim are predicate acts of mail fraud);

* Ron Sutton and Seltzer breached their fiduciary duties to plaintiff under state law;

* the Estate breached its fiduciary duty to plaintiff in 1974 when Roy C. Sutton purchased land for the benefit and use of his corporation but put it solely in Roy C. Sutton's name; and

* the Estate was unjustly enriched by plaintiff's services without reasonable pay.

(See Complaint, Cts. I–VI.) Plaintiff seeks an accounting of, and constructive trust for, the Estate; imposition of equitable liens; indemnification of losses payable from the Estate due to defendants' conduct; inheritance disbursement under Roy C. Sutton's will, trebled; pay for services; a return of a sanction against plaintiff in another case; and other damages.

Now before this Court are motions filed by each of the defendants to dismiss the plaintiff's complaint. Because the parties attached exhibits to the moving papers, and because all parties and the court rely upon these documents, the motions will be converted to motions for summary judgment so that the exhibits may be considered. Defendants argue that plaintiff's claims are barred by res judicata and collateral estoppel, that the complaint should be dismissed due to the *Rooker–Feldman* doctrine, and that plaintiff has failed to state a claim under § 1983 because none of the defendants acted under color of state law. For the reasons stated herein, this Court agrees with defendants, and this case will be dismissed.

## I. BACKGROUND [1]

Roy C. Sutton ("the Decedent") owned a piece of real estate in Atlantic City and a liquor license, in which he gave plaintiff a 6.7% interest. Decedent also owned an abutting tract of land, known as Hahn Place, which was used as a parking lot. In early 1985, the Decedent purchased with some of his own money and with other money that he intended as gifts for his children, an additional abutting tract of land to be used as a parking lot; each of his children had a ⅙ interest in this land (hereinafter referred to as "the Parking Lot"). When the Decedent died later that year, 93.3% of the Melody Lounge and the liquor license passed to the Decedent's wife, Loretta, 6.7% of the Melody Lounge and the liquor license passed to plaintiff, 100% of Hahn Place passed to Loretta, and each of the six children still owned a ⅙ interest in the Parking Lot.

Most of Decedent's children believed that their interest in the Parking Lot should be treated as partial satisfaction of bequests made to them in the will, but plaintiff disagreed. After an informal agreement failed, a formal accounting application was filed with the Bankruptcy Court. The Estate and its Co–Trustees were represented by Philip J. Perskie. Plaintiff, through his attorney George Seltzer (now a judge), filed an exception. A consent order dated May 6, 1988, placed on the record by the parties, settled the matter: instead of the $6,400 to which the informal agreement would have entitled him, plaintiff would receive $75,000 "without offset" (in addition to his interest in the Parking Lot and his 6.7% interest in Sy Cur, Inc., the corporation which owned the Melody Lounge and its liquor license) in exchange for a release of any further claim against the estate. The consent order also noted that the six children would sell the Parking Lot for $650,000.

Sometime thereafter, plaintiff came to believe that the defendants engaged in a conspiracy to violate tax laws; he wrote the Atlantic County prosecutor, the New Jersey Attorney General, and others about it to no avail. He then went to the Probate Court to vacate the consent order, but that was denied, as was reconsideration. Plaintiff did not take an appeal. Instead, on May 29, 1990, he filed a lawsuit in federal court ("First Federal Suit") against Perskie, Perskie's law firm, the Estate's accountants, the Estate's attorney, the Estate, and the Co–Trustees, alleging violations of tax laws and plaintiff's First Amendment rights. Judge Joseph H. Rodriguez granted a motion to dismiss, holding that the *Rooker–Feldman* doctrine, discussed *infra*, bars review of the state court's approval of the settlement and that the First Amendment claim is inextricably intertwined with the validity of the consent order. *Sutton v. Estate of Roy C. Sutton*, No. 90–2090 (D.N.J. Aug. 6, 1990). The Third Circuit affirmed, *Sutton v. Estate of Roy C. Sutton*, No. 90–5772 (3d Cir. Jan. 25, 1991), rehearing en banc was denied, *id.* (3d Cir. Feb. 26, 1991), and the U.S. Supreme Court denied certiorari, *Sutton v. Estate of Roy C. Sutton*, 500 U.S. 944, 111 S.Ct. 2243, 114 L.Ed.2d 484 (1991).

Unsatisfied, on August 11, 1991, plaintiff filed another suit in federal court before Judge Rodriguez (the "Second Federal Suit"), based on the same facts but with two judges, the New Jersey Attorney General, and the Atlantic County Prosecutor as additional defendants, and with additional claims based on § 1983 and RICO.

---

1. A condensed version of the relevant factual background follows. A much more thorough and complete history leading up to the filing of the instant lawsuit can be found in the Certification of Frederic L. Shenkman and the 72 supporting exhibits. With limited exceptions noted in his brief, mostly limited to characterizations of the effects of certain actions, plaintiff does not contest that the certification and exhibits accurately delineate the relevant history of the parties. This Court will also provide more detail in the discussion section of this Opinion about the previous lawsuits filed between the parties when it is appropriate to the discussion.

Judge Rodriguez dismissed the matter *sua sponte* for lack of subject matter jurisdiction, noting that this was just an attempt to attain federal jurisdiction in what was essentially relitigation of the adjudicated state court action; merely alleging that federal questions are involved, he said, is insufficient to convert a state law claim. *Sutton v. Estate of Roy F. Sutton*, No. 91–2694, mem. order at 4 (D.N.J. April 30, 1992) (memorandum order dismissing case). The Third Circuit affirmed, *Sutton v. Estate of Roy C. Sutton*, 975 F.2d 1552 (3d Cir.1992), and the Supreme Court denied certiorari, *Sutton v. Estate of Roy C. Sutton*, 506 U.S. 1038, 113 S.Ct. 823, 121 L.Ed.2d 694 (1992).

Still unsatisfied, plaintiff filed another suit in the Superior Court of New Jersey, Law Division; Perskie and the Co–Trustees were named in the suit ("Law Division Action"). *Sutton v. Perskie & Nehmad Law Firm*, No. ATL–L–001228–93 (N.J.Super. Ct. Law Div. filed March 16, 1993). Judge Williams dismissed much of the lawsuit on a motion to dismiss, including counts for unlawful accounting, fraudulent contracting/retaliatory firing, malicious loss of prospective economic advantage, waste, breach of fiduciary duty, malicious interference with a prospective economic advantage, quantum meruit, and corporate opportunity. *Id.* (N.J.Super. Ct. Law Div. May 10, 1993) (order denying change of venue and dismissing certain counts of complaint with prejudice). Almost a year later, Judge Williams granted summary judgment for the defendants on the remaining claims, including wrongful settlement/conversion (against Perskie and the Co–Trustees) and defamation. *Id.* (N.J.Super. Ct. Law Div. March 15, 1994) (order granting defendants summary judgment). These decisions were upheld on appeal. *Sutton v. Perskie & Nehman*, No. A–5190–93T3, slip op. (N.J.Super.Ct. March 13, 1995).

Meanwhile, plaintiff filed a Notice of Motion to Enforce Litigants Rights in the Probate Matter, assigned to Judge Previti, who determined after a hearing that plaintiff had no further interest in the Estate after he was paid the $75,000. *In the Matter of the Estate of Roy C. Sutton*, No. 71383 (N.J.Super.Ct. Ch. Div. December 19, 1993) (order denying motion to enforce litigant's rights). The Appellate Division affirmed, *In the Matter of the Estate of Roy C. Sutton*, No. A–2564–93T1 (N.J.Super.Ct.App.Div. Oct. 27, 1994), and the New Jersey Supreme Court denied certification, *In the Matter of the Estate of Roy C. Sutton*, No. C–441 (N.J. Jan. 10, 1995).

Defendants in this case attempted to amend their answer and counterclaim in the Law Division Action to enjoin and restrain plaintiff from litigating matters that had already been litigated or could have been litigated in the earlier actions. Judge Williams denied such leave to amend, and defendants thereafter filed a Chancery Action to effectuate the same relief. *Sutton v. Sutton*, No. ATL–C–11–94 (N.J.Super. Ct. Ch. Div. filed Feb. 9, 1994). Plaintiff here (defendant in the Chancery Action) filed counterclaims, alleging wrongful denial of access to the courts, wrongful conversion, and breach of fiduciary duty. *Id.* (N.J.Super. Ct. Ch. Div. filed March 1, 1994). Judge Gibson granted relief and entered the order enjoining plaintiff from litigating matters that had, or could have been, litigated in the earlier matters, and denying Roy F. Sutton's counterclaims with prejudice on the merits. *Id.* (N.J.Super.Ct. Ch. Div. Sept. 28, 1994). Judge Gibson ordered plaintiff to pay the other side's fees. *Id.* (N.J.Super.Ct. Ch. Div. Nov. 4, 1994).

No appeal was taken from the Chancery Action decision, but plaintiff filed yet another federal lawsuit on March 20, 1995 before Judge Rodriguez (the "Third Federal Suit"). *Sutton v. Gibson*, No. 95–1023 (D.N.J. filed March 20, 1995). This time Judge Previti, Judge Gibson, and Frederic Shenkman were included as defendants. Judge Rodriguez dismissed the case sua sponte. *Id.* (D.N.J. April 20, 1995) (order dismissing plaintiff's case, denying plain-

tiff's request for injunctive relief, and denying as moot motions to dismiss the case). The Third Circuit affirmed, *Sutton v. Gibson*, No. 95–5401 (3d Cir. Jan. 5, 1996), and the Supreme Court denied on certiorari, *Sutton v. Gibson*, No. 95–1545 (U.S. May 15, 1996).

After each of the lawsuits had been filed and dismissed,[2] a conflict arose as to the purchase price for the Melody Lounge and the abutting land that decedents' children had agreed upon in the Consent Order in the Probate Court. Unable to close a deal at the price in the Consent Order, Judge Previti reduced, and then further reduced, the price of the land. Eventually, there was an offer on the land, and the sale was approved and finalized on September 27, 1996. *In the Matter of the Estate of Roy C. Sutton*, No. 71383 (N.J.Super. Ct. Ch. Div. Sept. 27, 1996). The Estate filed an application for approval of disbursements, including an authorization to release certain moneys (approximately $23,000) to plaintiff. Plaintiff opposed the application, but Judge Himmelberger (of the Probate Court), finding that plaintiff was objecting simply for the sake of objecting, approved the disbursements. *Id.* (N.J.Super.Ct. Ch. Div. May 16, 1997). Plaintiff's view was not vindicated upon appeal.

On February 16, 1995, plaintiff also filed a lawsuit against George Seltzer based on malpractice, alleging that Seltzer was negligent in investigating, conducting litigation, and settling his case in the Probate Court. *Sutton v. Seltzer*, No. ATL–L000543–95 (N.J.Super. Ct. Ch. Div. filed Feb. 16, 1995). He contended that Seltzer wrongfully signed the Consent Order and breached his fiduciary duty to plaintiff. *Id.* The Superior Court of New Jersey dismissed the complaint with prejudice based on the entire controversy doctrine, finding that plaintiff could have adjudicated claims against Seltzer in the Law Division Action, in which plaintiff had accused the estate's attorneys, accountants, and personal representatives of knowingly con-

cealing the source of the $75,000 payment in the Consent Order. *Id.* (N.J.Super.Ct. Ch. Div. July 28, 1995). The Superior Court found that the summary judgment order in the Law Division case barred the malpractice claim, and the Appellate Division affirmed. *Sutton v. Seltzer*, No. A–458–95T2, slip op. at 4 (N.J.Super. Ct.App. Div. June 14, 1996). An application for certification to the New Jersey Supreme Court was denied. The Superior Court awarded fees to George Seltzer and denied an application to vacate the judgment allowing fees and sanctions. *Sutton v. Seltzer*, No. GLO L 672–95 (N.J.Super. Ct. Law Div. Oct. 30, 1995, June 25, 1996, and Feb. 7, 1997). The Appellate Division affirmed the award of fees and sanctions, *Sutton v. Seltzer*, No. A–4760–96T1 (N.J.Super. Ct.App. Div. Jan. 13, 1998), and the New Jersey Supreme Court denied certification, *Sutton v. Seltzer*, No. C–874 (N.J. March 24, 1998).

Finally, on February 8, 1999, plaintiff filed his fourth federal lawsuit, the instant case. The list of defendants includes Co–Trustee Ronald Sutton, the estate of Co–Trustee Loretta Sutton, the Estate, Perkie, and Frederic Shenkman, all of whom were parties to the aforementioned lawsuits which plaintiff had filed previously. The defendants also include the Goldenberg firm (where Frederic Shenkman was a partner), the City of Atlantic City and its municipal ABC Commissioners (who approved the liquor license transfer that went with the sale of the Melody Lounge and its abutting land), and George Seltzer. According to the Complaint, plaintiff alleges counts against the Co–Trustees, Perskie, Goldenberg, Shenkman, and Seltzer for RICO and RICO conspiracy (through inheritance set-offs, securities concealment, retaliatory firing, fraudulent settlement, wrongful death conversion, corporate stock conversion, real property conversion, retaliatory discharge, and a host of mail fraud violations which occurred when defendants filed papers in

---

**2.** Or, in the case, of the Chancery Action,    decided in defendants' favor.

the various court cases filled with alleged lies); against the City of Atlantic City, the ABC Commissioners, the Co–Trustees, Goldenberg, and Shenkman under 42 U.S.C. § 1983 (for denying plaintiff his property interest in his liquor license); against Ronald Sutton and George Seltzer for breach of fiduciary duty; and against the Estate for corporate opportunity and unjust enrichment.

Each defendant has moved to dismiss the case. Because they attached exhibits to their moving papers to which plaintiff has responded and upon which this Court will rely, their motions will be converted into motions for summary judgment pursuant. Defendants argue that plaintiff's claims are barred because of res judicata and collateral estoppel, because of the *Rooker–Feldman* doctrine, and because the defendants are not state actors. This Court will now address these arguments.

## II. *DISCUSSION*

Plaintiff alleges three federal causes of action, upon which this Court's jurisdiction is based, against each of the defendants (with the exception of the Estate, against which only state causes of action are alleged): RICO, RICO conspiracy, and § 1983 (except against defendant Seltzer). Defendants argue that these claims should be dismissed as a result of res judicata, collateral estoppel, and the entire controversy doctrine, because of the *Rooker–Feldman* doctrine, and because each defendant is not a state actor. This Court finds that res judicata, the entire controversy doctrine, and the *Rooker–Feldman* doctrine bar all of plaintiff's current claims. As the case will be dismissed on these grounds, this Court need not discuss defendants' argument that the civil rights claim should be dismissed because the defendants are not state actors.

### A. *Legal Theories*

1. *Res Judicata and the Entire Controversy Doctrine*

Defendants argue that the claims are barred by res judicata, also known as claim preclusion. In determining whether claims in the instant matter are barred by res judicata, this Court looks to the well-settled rule recited in *Paramount Aviation Corporation v. Agusta,* 178 F.3d 132, 135–36 (3d Cir.1999), that "federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court...." Because the instant case involves previous decisions of both federal and state courts, this Court must look to both federal and New Jersey preclusion doctrines. The two are nearly identical.

■ Under federal law, res judicata prohibits a party from reopening and relitigating issues that were or could have been decided in a previous case involving the same parties arising out of the same transaction. There are three elements to claim preclusion: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *EEOC v. United States Steel Corp.,* 921 F.2d 489, 493 (3d Cir. 1990). *See also Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Res judicata precludes claims that were determined in the earlier action as well as ones that could have been determined. *Angel v. Bullington,* 330 U.S. 183, 192–93, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

■ As plaintiff has pointed out, with respect to the three prior federal law suits, federal preclusion law does not bar plaintiff's current action. Each of the three previous federal lawsuits was dismissed for lack of subject matter jurisdiction, and under Rule 41(b), Federal Rules of Civil Procedure, a dismissal for lack of subject matter jurisdiction is not an adjudication upon the merits. Therefore, the fact that previous federal lawsuits against similar defendants on similar issues were filed by the plaintiff and dismissed by Judge Rodriguez for lack of subject matter jurisdiction does not preclude the instant lawsuit as a

matter of res judicata or collateral estoppel.

▮ However, many of plaintiff's claims, as discussed below, are barred by state res judicata, among other reasons, arising from the matters litigated in the state courts. New Jersey courts apply essentially the same analysis for res judicata: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592 (1991) (quoting *Moitie*, 452 U.S. at 398, 101 S.Ct. 2424, as consistent with New Jersey law). A cause of action "that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." *Velasquez v. Franz*, 123 N.J. 498, 505, 589 A.2d 143 (1991). Thus, if a claim could have been presented in the first action (because the court would have had jurisdiction), it will be precluded in the second action, *Watkins*, 124 N.J. at 413, 591 A.2d 592.

▮ In addition to traditional res judicata, New Jersey has another claim preclusion theory which, under *Paramount Aviation*, this Court must apply: the entire controversy doctrine. While similar to res judicata principles, the entire controversy doctrine, which is unique to New Jersey, "encompasses traditional concepts of claims joinder as well as party joinder...." *Fornarotto v. American Waterworks Co., Inc.*, 144 F.3d 276, 278 (3d Cir.1998).

> The fundamental principle behind the inclusion policy of the entire controversy doctrine is that the adjudication of a legal controversy should occur in one litigation in one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding

all of their claims and defenses that are related to the underlying controversy. *Id.* (quoting *Venuto v. Witco Corp.*, 117 F.3d 754, 761 (3d Cir.1997)). As explained by the New Jersey Supreme Court, the main test under the entire controversy doctrine is whether "the claims against the different parties arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding." *DiTrolio v. Antiles*, 142 N.J. 253, 267–68, 662 A.2d 494 (1995) (internal citations omitted). Thus, though the parties and the claims in the second suit may be different than those in the first suit, the second suit may nonetheless be barred because it concerns the series of transactions already at issue in the first suit. It is through this formula, which is broader than traditional res judicata, that the New Jersey Legislature, in adopting the doctrine through Rule 4:30A of the New Jersey Rules of Civil Procedure, seeks to promote "judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." *Fornarotto*, 144 F.3d at 278 (citing *Venuto*, 117 F.3d at 761).

### 2. *The Rooker–Feldman Doctrine*

▮ Under 28 U.S.C. § 1257, final judgments or decrees entered by the highest court of a state may only be reviewed by the United States Supreme Court via a writ of certiorari. Under the *Rooker–Feldman* doctrine, gleaned from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), lower federal courts cannot "sit in direct review of the decisions of a state tribunal." *Whiteford v. Reed*, 155 F.3d 671, 673 (3d Cir.1998) (quoting *Gulla v. North Strabane Township*, 146 F.3d 168, 170 (3d Cir.1998)). If the relief sought in a federal action (not before the Supreme Court) would "effectively reverse the state

decision or void its ruling ... the district court has no subject matter jurisdiction to hear the suit." *Whiteford,* 155 F.3d at 674 (quoting *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996)). The doctrine applies to the decisions of lower state courts as equally as it does to higher state courts, *Whiteford,* 155 F.3d at 674, so long as the state adjudicative action reached the merits of a plaintiff's claims. *Gulla,* 146 F.3d at 172–73.

### B. *Application of Theories to the Instant Case*

■ As explained above, none of Judge Rodriguez's three previous dismissals of the federal actions which plaintiff filed bar the instant action as a matter of res judicata or collateral estoppel. The entire controversy doctrine and the *Rooker–Feldman* doctrine speak only to the effect of prior state judgments, and thus this Court does not lack subject matter jurisdiction over this law as a result of the previous federal actions under those theories either. However, even though this Court has jurisdiction to determine RICO claims and Civil Rights Act claims, the previous state actions do bar the instant action, including these federal claims, as a result of res judicata, the entire controversy doctrine, and the *Rooker–Feldman* doctrine.

Though the instant law suit adds additional parties (Goldenberg and the City of Atlantic City and its ABC Commissioners), and purportedly adds additional claims of RICO, RICO Conspiracy, 42 U.S.C. § 1983, and state claims, this Court finds that it does nothing more than rehash claims that were or could have been made in any of the previous state lawsuits.

Although plaintiff has characterized his lawsuit as based on federal claims, including RICO, 18 U.S.C. § 1964(c), and 42 U.S.C. § 1983, over which both federal and state courts have original jurisdiction,[3] he is attempting to do exactly that for which Judge Rodriguez criticized him in the Second Federal Suit: trumping up federal jurisdiction over state law claims for strategic reasons. *Sutton v. Estate of Roy C. Sutton,* No. 91–2694, slip op. at 4 (D.N.J. April 30, 1992). Just as in the Second Federal Suit, "[p]laintiff's complaint is a 'rambling narrative' in excess of forty counts, encompassing civil rights, RICO, and common law claims. However, merely alleging federal violations will not transform state claims into federal claims. As stated in *Bell [v. Hood,* 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ], a claim may be dismissed on jurisdictional grounds where it is immaterial and made solely to attain jurisdiction." *Sutton,* No. 91–2694, slip op. at 5–6 (D.N.J. April 30, 1992). Judge Rodriguez looked through the civil rights and RICO claims and found that plaintiff's case was nothing more than another expression of plaintiff's continuing distress over the accounting of the Estate and the state court's alleged failure to

---

**3.** State courts have concurrent jurisdiction over claims arising under 42 U.S.C. § 1983. *Maine v. Thiboutot,* 448 U.S. 1, 2 n. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Bennett v. White,* 865 F.2d 1395, 1406 (3d Cir.1989); *Maisonet v. New Jersey Dept. of Human Services, Div. of Family Dev.,* 140 N.J. 214, 221, 657 A.2d 1209 (1995) (noting, "New Jersey courts have entertained section 1983 actions for many years. *See Endress v. Brookdale Community College,* 144 N.J.Super. 109, 131–32, 364 A.2d 1080 (App.Div.1976)."). Likewise, state courts have concurrent jurisdiction over civil RICO claims. *See Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (though 18 U.S.C. § 1964(c) says that any person injured by violations of § 1962 may sue "in any appropriate United States district court," it did not say that federal jurisdiction was exclusive, and the presumptive authority of state courts to adjudicate such claims is therefore retained). *See also McCarter v. Mitcham,* 883 F.2d 196, 200–01 (3d Cir.1989) (under Pennsylvania law, which does not apply claim preclusion if the original court lacked subject matter jurisdiction, res judicata barred civil RICO claims later brought in federal court because state courts have jurisdiction over civil RICO claims). Thus, there was no jurisdictional bar to plaintiff's ability to have sought redress under § 1983 or under RICO in the Superior Court of New Jersey.

satisfactorily redress his complaints, and Judge Rodriguez dismissed the case for lack of subject matter jurisdiction. *Id.* at 6.

The instant lawsuit presents the exact same situation. Plaintiff has again attempted to characterize his case as RICO and § 1983 claims when the case is nothing more than an attempt to manufacture federal jurisdiction by assembling the claims that have already been asserted and rejected in the Superior Court, or which could have been brought in that court when related disputes arising from these transactions were litigated. Looking through his artful pleading to the substance of the allegations themselves, it is clear that plaintiff continues to express his distress over the accounting and distribution of his father's estate. Plaintiff alleges one problem after another with the legality and propriety of the accounting of the Estate, including alleged wrongful handling of a wrongful death suit, a supposedly fraudulent consent order, and alleged improper approval of the liquor license transfer as a part of the Estate, and he states that defendants' representations to the various courts throughout the years that the accounting was proper constituted fraud perpetrated through the filing of false statements in briefs through the mail system. This is not a RICO claim; it is, once again, an attempt to get federal review of the handling of the Estate in a circumstance where each essential component of the "new" federal claim was previously adjudicated adverse to plaintiff in the courts of New Jersey.

As explained above, the *Rooker–Feldman* doctrine bars this Court's review of adjudicative actions by state courts. *See Whiteford,* 155 F.3d 671. Here, that doctrine bars this Court's review of handling of the Estate as approved by the Probate Court, both through the consent order settling plaintiff's challenge to the estate (and the subsequent decisions not to vacate the consent order, upheld by appeals courts) and the more recent activities related to

the sale of the land and the liquor license transfer. The Probate Court's decisions were adjudicative ones, declaring and enforcing liabilities under the law. Any review of those decisions could be handled through the appellate procedures of the New Jersey state courts and, if necessary, through an application for a writ of certiorari with the U.S. Supreme Court. Though the Supreme Court would have appellate jurisdiction pursuant to 28 U.S.C. § 1257, this district court does not.

Moreover, the claims in this case are barred by either res judicata or the entire controversy doctrine. In the Law Division action, plaintiff put the accounting of the Estate, including the settlement by consent order, at issue. The Co–Trustees and Philip Perskie were named as defendants in that case, which concerned the same transaction or series of transactions at issue in this Fourth Federal Action. The Law Division reached a final judgment on the merits of that case (which was affirmed by the Appellate Division), dismissing certain of the specific claims (unlawful accounting, fraudulent contracting/retaliatory firing, malicious loss of prospective economic advantage, waste, breach of fiduciary duty, malicious interference with a prospective economic advantage, quantum meruit, and corporate opportunity) for failure to state a claim and other claims (wrongful settlement/conversion and defamation) upon a motion for summary judgment. Thus, because the Law Division action involved the same claim (albeit with very slightly different issues) as the instant suit and resulted in a final judgment on the merits, its decisions dismissing the case act as res judicata upon plaintiff's current claims against the Co–Trustees and Perskie. *See Watkins,* 124 N.J. at 412, 591 A.2d 592.

None of the other parties to the instant case were named as defendants in the Law Division Action, and all other claims against the additional defendants were made in lawsuits dismissed for lack of subject matter jurisdiction; thus, none of

the prior cases act as res judicata to the claims against these additional defendants (Goldenberg, Shenkman, Seltzer, the Estate, the City of Atlantic City, and the ABC Commissioners). However, as the Appellate Division said when reviewing the Law Division's dismissal of plaintiff's malpractice claims against George Seltzer in *Sutton v. Seltzer,* No. A–458–95T2, slip op. (N.J.Super. Ct.App. Div. June 14, 1996), the Law Division Action against the Co-Trustees, Perskie, and others barred later actions against those defendants and others based on the settlement of the Estate under the entire controversy doctrine. *Id.* at 4. The claims against defendants Goldenberg, Shenkman, and Seltzer in the instant lawsuit arise from the same transaction or series of transactions as those at issue in the Law Division Action, and thus plaintiff, if he was to raise this claims at all, was required to litigate all of his claims in one action. *See Fornarotto,* 144 F.3d 276. He failed to do so.

To the extent to which the instant complaint makes claims against the City of Atlantic City and the ABC Commissioners (and other defendants) which are not based on settlement and accounting of the Estate as it existed at the time of the Law Division Action, those claims are barred by the Probate Court's more recent actions with regard to the Estate. The Probate Court reached a final decision on the sale price of the land and the transfer of the liquor license, and that decision was affirmed on appeal. Under the *Rooker–Feldman* doctrine, this Court is without subject matter jurisdiction to review the state court's ultimate handling of the accounting of the Estate, including transfer of the liquor license. Plaintiff cannot seek review of the Probate Court's handling of the transfer of the license by framing it as a civil rights and RICO claim against individuals or officials who played a part in the transfer of that license pursuant to the Probate Court's jurisdiction and order. Any relief for plaintiff which this Court could grant plaintiff due to the alleged fault of the defendants in the transfer of the liquor license and the sale of the land would necessarily have the effect of reversing or voiding the Probate Court's decision. The *Rooker–Feldman* doctrine bars this Court from doing just that. If the municipality and the licensing commissioners could be haled into federal court for their compliance with the directives of a lawful order of the state court, it would do inestimable damage to our system of federalism and, ultimately, to the rule of law.

This Court finds that plaintiff does not raise any allegation that was not (or could not have been) passed upon by a state court (whether the Law Division or the Probate Court, affirmed through the appellate courts) or that does not involve federal district court review of a state court adjudicative action. Thus, all of his claims are bared by res judicata, the entire controversy doctrine, and the *Rooker–Feldman* doctrine. The entire complaint must be dismissed.

### III. *CONCLUSION*

This Court is barred from reviewing plaintiff's allegations as a result of the entire controversy doctrine and the *Rooker–Feldman* doctrine, and plaintiff is barred from bringing many of the claims as a result of res judicata. For all of the foregoing reasons, plaintiff's complaint must be dismissed. The accompanying Order is entered.

### ORDER

This matter having come before the Court upon defendants' motions to dismiss; and the Court having considered the parties' submissions; and for the reasons expressed in the Opinion of today's date;

IT IS this day of October 1999 hereby

ORDERED that defendants' motions to dismiss be, and hereby are, *GRANTED,* and this action shall be dismissed with prejudice in its entirety.

Costs for defendants.