**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1506
_____

MOHAMED KHALIL; SANDRA DAMRAH,
                                        Appellants

v.

NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY,
f/k/a DIVISION OF YOUTH AND FAMILY SEVICES;
KARA P. WOOD, IN HER OFFICIAL CAPACITY AS DIRECTOR OF DCP&P;
ALLISON BLAKE, IN HER OFFICIAL CAPACITY AS
THE COMMISSIONER OF THE DEPARTMENT OF CHILDREN AND FAMILIES;
KEVIN BELLI, IN HIS INDIVIDUAL CAPACITY;
GILLIAN BATTS, IN HER INDIVIDUAL CAPACITY;
JANET DASILVA, IN HER INDIVIDUAL CAPACITY;
ESPERANZA VARGAS, IN HER INDIVIDUAL CAPACITY;
ARLENE COHN, IN HER INDIVIDUAL CAPACITY;
EZEADI KELECHI, IN HIS INDIVIDUAL CAPACITY;
ALICE SCHAEFFER-NADELMAN, IN HER INDIVIDUAL CAPACITY;
GERALDINE LIVENGOOD, IN HER INDIVIDUAL CAPACITY;
FAMILY INTERVENTION SERVICES; JOHN DOES 1-15
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-12-cv-07284)
District Judge: Honorable Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 8, 2014

BEFORE: VANASKIE, COWEN and VAN ANTWERPEN, <u>Circuit Judges</u>

(Filed: February 4, 2015)

_____

OPINION*

_____

COWEN, <u>Circuit Judge</u>.

The plaintiffs-appellants, Mohamed Khalil and Sandra Damrah (together, "Appellants"), alleging federal and state law claims, filed suit in federal court against the New Jersey Division of Child Protection and Permanency (the "DCP&P"), certain of its associates and employees, and other persons involved in the care and/or oversight of Khalil's son (collectively, "Appellees"). Appellants seek review of the District Court's order dismissing their complaint. Because we conclude that dismissal was appropriate, we will affirm.

## I.

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis.

This case stems from two events. The first involved family court proceedings regarding Khalil's parental rights over his child, A.R.K, and does not appear to implicate Damrah's rights. Due to an incident that occurred at the home of A.R.K.'s biological mother, the police were called and Khalil arrested. Following his arrest, the DCP&P

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

removed A.R.K. from his biological mother's home, placed him in a foster home, and restricted Khalil's visitation with him. Despite Khalil's alleged compliance with all requirements placed on him, DCP&P successfully sought termination of his parental rights. Khalil alleges that the termination of his parental rights was the culmination of false statements made by Appellees throughout the family court proceedings.

The second event involved an encounter with defendant/appellee Ezeadi Kelechi, a DCP&P child protective services worker. Asserting various federal and state law claims, Appellants allege that while the two of them were dining at a public restaurant, Kelechi harassed and threatened them, shouting loudly that Khalil is a terrorist and that DCP&P has custody of his son and will never give him back. Kelechi also reportedly knew how much Khalil had paid in attorney's fees, mocked his religious and ethnic roots, and questioned whether Damrah was born in the United States because she didn't "look like it." (Compl. ¶¶ 107-11.) Appellants allege that this incident establishes a conspiracy between Kelechi and Appellees to violate Khalil's civil rights.

**II.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's order dismissing a complaint and its application of the *Rooker-Feldman* doctrine. *Whiteford v. Reed*, 155 F.3d 671, 672 (3d Cir. 1998). When considering a motion to dismiss a complaint, a court must view the factual allegations as true and dismiss only if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3

A.     Application of the *Rooker-Feldman* Doctrine

The federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).  Pursuant to the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  It therefore falls to Khalil, as the party asserting jurisdiction, to demonstrate that the *Rooker-Feldman* doctrine does not apply to his claims arising out of the family court proceedings.

The doctrine requires that "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  We have counseled that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

Here, the first and third requirements are clearly met.  Khalil lost in state court, and the family court's decision to terminate his parental rights was rendered prior to initiation of his federal suit.  We therefore focus our inquiry on the second and fourth prongs.  We

4

have noted that these requirements are "closely related." *Id.* at 168. Khalil argues that he does not complain of injuries caused by the state-court judgment, but rather of injuries caused by Appellees. He similarly asserts that he does not ask us to review and reject the state-court judgment because he invites review only of Appellees' conduct in the state-court proceedings. We find these arguments unpersuasive.

That Khalil is really challenging the state court's decision to terminate his parental rights is evidenced by the allegations in the complaint. He complains that "[i]t was the actions of the Defendants . . . that resulted in the termination of his parental rights," and contends that Appellees committed fraud upon the court "in terminating [his] parental rights." (Compl. ¶¶ 46, 117.) In fact, the termination of Khalil's parental rights was the result of a state-court order. Accordingly, the *Rooker-Feldman* doctrine applies, and the District Court correctly concluded that it lacked jurisdiction to consider the majority of Khalil's claims against Appellees.

This conclusion is supported by our opinion in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*. In *Great Western*, we declined to apply the *Rooker-Feldman* doctrine to a lawsuit brought by the plaintiff-appellant alleging "an extensive conspiracy among [a defendant], numerous attorneys, and various state-court judges to engineer [the plaintiff's] defeat in state court." 615 F.3d at 171. While acknowledging that the suit attacked state-court judgments, we concluded that we had jurisdiction over the claims because the "people involved in the decision violated . . . [the plaintiff's] right to an impartial forum." *Id.* at 172. In contrast here, Khalil does not allege any conspiracy on

5

the part of the family court or state court judges who ultimately made the decisions affecting his parental rights. Indeed, although Khalil alleges that Livengood, a New Jersey deputy attorney general, falsely represented that Khalil's stepson committed suicide while in his custody, he has not alleged any "agreement [between Appellees and the state court decisionmakers] to reach a predetermined outcome in [his] case," such that he has pled a constitutional claim independent of any harm he suffered as a result of the state-court decisions. *Id.*

Nor can Khalil find refuge in our decision in *Ernst v. Child and Youth Servs. of Chester County*, 108 F.3d 486 (3d Cir. 1997). In *Ernst*, we concluded that the *Rooker-Feldman* doctrine did not apply to a plaintiff's claims of bias against employees of the Chester County Children & Youth Services ("CYS"), who the plaintiff alleged harbored improper motives for seeking an adjudication of dependency regarding her granddaughter. *Id.* at 492. In so holding, we noted that a state court's decision regarding dependency is not based on any determination that the CYS employees were pursuing the determination for an improper motive. *Id.* Here, however, Khalil directly attacks the state-court judgment, claiming that it erroneously terminated his parental rights as the result of allegedly false accusations, concealed facts, and wholly fabricated statements on the part of the DCP&P employees. It is therefore impossible for us to grant Khalil relief without concluding that the foundation for the state court's opinion was incorrect, thereby rejecting the state court's judgment regarding his parental rights. This result is barred by the *Rooker-Feldman* doctrine.

6

Because, however, Appellants' claims stemming from their encounter with Kelechi arise from conduct that occurred after the state-court judgment was final, we consider them separately.

B.     Remaining Federal Claims Against Kelechi

The District Court dismissed the remainder of Appellants' substantive constitutional claims, concluding that they failed to plead any plausible claim that their constitutional rights had been violated.  Appellants have not appealed those determinations.  Rather, they challenge only the District Court's dismissal of their claims of constitutional conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  Each of these statutes requires, at base, an agreement to deprive an individual of some legal right. The District Court concluded that dismissal of these claims was appropriate because the "bare allegation of an agreement is insufficient to sustain a conspiracy claim." *Khalil v. NJ Div. of Child Protection and Permanency*, Civ. No. 12-7284 (KSH), 2014 WL 356604, at *11 (D.N.J. Jan. 31, 2014).  We agree.

Appellants' sole basis for the existence of a conspiracy is their allegation that Kelechi had knowledge of information that he otherwise should not have known.  They surmise from this fact that he must have gained this information as part of a conspiracy with the other Appellees to deprive Khalil his parental rights.  Without more, such pure conjecture is simply insufficient to state a plausible claim.  *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level"); *see also Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming the

7

dismissal of a claim as legally frivolous because it was based "merely upon [the plaintiff's] own suspicion and speculation.").

## III.

In light of the foregoing, the order of the District Court entered on January 31, 2014, will be affirmed.