**Enez BALTHAZAR, Plaintiff,**

v.

**ATLANTIC CITY MEDICAL CENTER, Atlantic City Medical Center Community Health Services, Barbara Henderson, M.D., Joseph DeStefano, M.D., Allan Feldman, M.D., Phillip Korzeniowski, M.D., DeStefano, Feld-**

man & Kaufman, P.A., DeStefano, Feldman, Kaufman, & Korzeniowski, P.A. University of Medicine and Dentistry of New Jersey, School of Osteopathic Medicine And Richard Cooper, D.O., Defendants.

Civ.A. No. 02–1136.

United States District Court, D. New Jersey.

Aug. 15, 2003.

Frank D. Branella, Philadelphia, PA, for
Enez Balthazar.

Sean Robins, Gold, Butkovitz & Robins,
P.C., Elkins Park, PA, for Atlantic City
Medical Center and Atlantic City Medical
Center Community Health Services.

Sharon K. Galpern, John A. Talvacchia,
Stahl & DeLaurentis, P.C., Voorhees, NJ,
for Barbara Henderson, M.D., and Phillip
Korzeniowski, M.D.

Joseph A. Martin, Kerri E. Chewning,
Archer & Greiner, P.C., Haddonfield, NJ,
for Joseph DeStefano, M.D., Allan Feld-
man, M.D., DeStefano, Feldman & Kauf-
man, P.A., and DeStefano, Feldman, Kauf-
man & Korzeniowski, P.A.

Thomas F. Marshall, Mount Holly, NJ,
for University of Medicine and Dentistry
of New Jersey, School of Osteopathic Med-
icine and Richard Cooper, D.O.

## OPINION

ORLOFSKY, District Judge.

Once again, this Court is confronted
with the painful and difficult duty of deter-
mining whether to impose sanctions
against an attorney pursuant to Rule 11 of
the Federal Rules of Civil Procedure. In
this case, an attorney who failed to file an
Affidavit of Merit in a medical malpractice
case in state court, thereby causing his
client's case to be dismissed, has attempt-
ed under the guise of the federal RICO
statute, to relitigate the merits of his
client's state law claims in this Court.
Moreover, Plaintiff's counsel has persisted
in pursuing an action in this Court despite
a letter from this Court warning him in
advance of the risk of Rule 11 sanctions,
should he do so, and the issuance of an
Order to Show Cause as to why such sanc-
tions should not be imposed. For the
reasons that follow, I find that Plaintiff's
counsel, Frank D. Branella, Esq., has vio-
lated Rule 11. Accordingly, I shall order
Mr. Branella to complete continuing legal
education courses in: (1) Federal Practice

and Procedure; and (2) Professionalism and the Rules of Professional Conduct; (3) within one year from the date of this Opinion and Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following factual recitation is based upon the allegations set forth in Plaintiff's Complaint filed with this Court on March 14, 2002. On January 27, 1998, Enez Balthazar ("Balthazar"), a resident of Ocean City, New Jersey, underwent a total abdominal hysterectomy at Atlantic City Medical Center ("ACMC"), a medical facility located in Pomona, New Jersey. Compl. ¶¶ 3, 5, 15. The procedure was performed by Defendants, Dr. Barbara Henderson ("Henderson") and Dr. Phillip Korzeniowski ("Korzeniowski"), physicians who specialize in obstetrics and gynecology, and was attended by Dr. Richard Cooper ("Cooper"), who was then a resident at ACMC working under the supervision of University of Medicine and Dentistry of New Jersey, School of Osteopathic Medicine ("UMDNJ"). *Id.* ¶¶ 6, 9, 15. On January 30, 1997, a board certified urologist, Dr. Barry Kimmel ("Kimmel"), discovered that Balthazar was suffering from a left uretal obstruction. Kimmel testified in a deposition that he believed Balthazar's left ureter had been lacerated during the hysterectomy performed on January 27, 1998. *Id.* ¶¶ 16, 18. Subsequently, on January 31, 1998, Kimmel, assisted by Henderson and Dr. Allan Feldman ("Feldman"), conducted an exploratory laparotomy, in which Kimmel discovered several stitches on and around Balthazar's left ureter. *Id.* ¶ 17.

### A. The State Court Proceedings

On June 21, 1999, Balthazar commenced a medical malpractice suit in the Superior Court of New Jersey, Law Division, Camden County ("Superior Court") against ACMC, Atlantic City Medical Center Community Health Services (the "Community"), Henderson, Dr. Joseph DeStefano ("DeStefano"), Feldman, Korzeniowski, DeStefano, Feldman & Kaufman, P.A., DeStefano, Feldman, Kaufman, & Korzeniowski, P.A. (collectively, "the Associations"), UMDNJ, and Cooper.[1] Compl., *Balthazar v. Atlantic City Medical Ctr. et al.,* No. L–4527–99 (N.J.Super.Ct. Law Div. June 21, 1999). In her complaint, Balthazar alleged that she sustained injuries as a result of the Defendants' allegedly negligent performance of the hysterectomy. *Id.* Specifically, she contended that "Henderson, Korzeniowski, and Cooper used medically unacceptable procedures which prevented their ability to identify, isolate and/or protect the Plaintiff's left ureter from being transected." *Id.* ¶ 19.

The Superior Court dismissed the action with prejudice against Henderson, DeStefano, Feldman, and Korzeniowski, because of Balthazar's failure to provide an Affidavit of Merit, pursuant to N.J. Stat. Ann. §§ 2A:53A–26, *et seq.* Order, *Balthazar,* No. L–4192–99 (N.J.Super.Ct. Law Div. May 14, 2001). Following discovery, Defendants, ACMC, UMDNJ, and Cooper, filed a motion for summary judgment, and Balthazar filed a motion for leave to amend the complaint to add allegations of common law battery, fraud, and fraudulent concealment. *See* Cert. of Thomas F. Marshall at Ex. F. On May 14, 2001, after hearing oral arguments, the Honorable Carol E. Higbee, J.S.C., granted Defendants' motion for summary judgment, de-

---

1. At some point in time following the filing of the Complaint in the Superior Court of New Jersey, Law Division, Camden County, the state court case was transferred to the Superior Court of New Jersey, Law Division, Atlantic County.

nied Balthazar's motion for leave to amend the complaint, and dismissed the case as to all parties. *Id.* Judge Higbee explained her reasoning for this decision as follows:

The fact of the matter is we don't know what exactly what Cooper did.... Plaintiff suggests that the defendants are trying to forget on purpose, conceal what happened, and that because the patient's unconscious—and we do have a methodology for dealing with this ... If, in fact, a person's asleep in the operating room, negligence occurs, if you name everybody in the operating room bring them all in, have them all named defendants, the burden of proof's going to shift to them. That's your *Anderson v. Sondberg* [sic], that's your res ipsa in the operating room, that's your shifting of proofs that occur in those situations, but you have to have all the doctors in. You can't have—could have been one of the three doctors. We don't know which one, and two of them aren't in the case.

If you've got all three doctors in the case then the defendants darn well better start remember [sic] who did what or they've got a problem.... Proving that nobody knows what happened is not sufficient proof to carry against the one defendant that's in this case.

*See* 5/14/01 Hr'g Tr. from Superior Court at 14–15. On June 26, 2001, Balthazar filed a notice of appeal to the Superior Court of New Jersey, Appellate Division ("Appellate Division"). Notice of Appeal, *Balthazar,* No. A–5661–00T3 (N.J.Super.Ct.App.Div. June 26, 2001).

On March 5, 2003, the Appellate Division affirmed Judge Higbee's decision. *See Balthazar v. Atlantic City Med. Ctr.,* 358 N.J.Super. 13, 816 A.2d 1059 (App.Div.

2003). In addition to holding that Balthazar failed to "substantially comply" with the statutory requirements of providing an Affidavit of Merit, *see id.* at 23–24, 816 A.2d 1059, the Appellate Division found no evidence of fraud or fraudulent concealment in the record. *Id.* at 21–22, 816 A.2d 1059.

We do not find patent the "fraud" that plaintiff claims to exist, and find no other evidence to suggest that it occurred. Dr. Henderson presented a perfectly reasonable and essentially uncontroverted explanation for the existence of the two operative reports in Balthazar's hospital chart. Moreover, the second report was clearly designated "REDICTATION," thereby providing notice to anyone viewing the chart that another version had previously been given by her to the transcriber. Neither report contained overly exculpatory or inculpatory material. Both were dictated before damage to the ureter was discovered. Thus, this is not a case in which there is evidence of deliberate destruction or alteration of medical records in anticipation of the suit. Both operative reports existed in the chart essentially from the outset, and both were available to Balthazar for her analysis and use.

*Id.* at 21, 816 A.2d 1059. Balthazar has purportedly filed a Petition for Certification with the New Jersey Supreme Court. *See* Proposed Am. Compl. ¶ 49.

## B. The Federal Court Proceedings

On March 14, 2002, Balthazar filed a Complaint in this Court, in which she alleged that Defendants, ACMC, the Community, Henderson, DeStefano, Feldman, Korzeniowski, the Associations, UMDNJ, and Cooper,[2] engaged in a pattern of rack-

2. According to Balthazar's Complaint, Henderson, DeStefano, Feldman, and Korzeniowski, physicians who specialize in the field of obstetrics and gynecology, maintain medical offices at ACMC, as well as the Asso-

eteering activity as part of "an ongoing scheme to deprive Plaintiff of her property and ... an attempt to deprive the Plaintiff of due process of law in that the Defendants intentionally and maliciously sought to pervert the administration of justice." Compl. ¶ 36. According to Balthazar, Defendants engaged in an illegal campaign to cover up Henderson, Korzeniowski, and Cooper's allegedly negligent behavior during the January 27, 1998 hysterectomy. Specifically, Balthazar maintained that Defendants "provided false and fraudulent medical records ... with forged signatures," as well as "conspired to hide the whereabouts" of Cooper as she attempted to litigate her claims in state court. *Id.* ¶¶ 21–22.[3]

Accordingly, Balthazar alleged that Defendants conspired to defraud her "by impairing [her] ability to litigate the Malpractice Case and increasing the cost of litigation thereby wasting Plaintiff's assets," in violation of the federal RICO statute, 18 U.S.C. § 1962, and New Jersey's RICO statute, N.J. Stat. Ann. § 2C:41–4, Compl. ¶¶ 50, 59,[4] as well as "conspired and agreed to commit fraudulent practices" against her and deprived her of her right to due process of law and equal protection in violation of 42 U.S.C. § 1985, *id.* ¶ 71. Finally, Balthazar alleged that Defendants engaged in fraud, deceit, and misrepresentation by altering, falsifying, destroying, and concealing material records and documents in violation of N.J. Stat. Ann. §§ 2C:21–4.1, 8:43G–15.3, 13:35–6.5 and New Jersey common law.

Before the Appellate Division had determined that Balthazar had failed to provide evidence of either fraud or fraudulent concealment, Defendants, UMDNJ and Cooper, moved in this court to dismiss Balthazar's Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), on the basis of res judicata, New Jersey's "entire controversy doctrine," and the *Rooker–Feldman* doctrine. In an unpublished Order dated July 19, 2002, I denied Defendants' motion, holding that Balthazar's claims of litigation fraud, which formed the basis of her federal RICO action, were not "inextricably intertwined" with the medical malpractice claim she brought before the Superior Court. Order, *Balthazar v. Atlantic Med. Ctr.,* Civ. A. No. 02–1136 (D.N.J. July 19, 2002).

On August 22, 2002, Defendants, ACMC and the Community, also moved to dismiss Balthazar's Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). In an unpublished Opinion and Order dated March 3, 2003, I granted the motion of ACMC and the Community to dismiss the claims brought against all Defendants under federal law, however, I granted Plaintiff leave to move to amend the Complaint within 30 days. *See* Opinion & Order, *Balthazar,* Civ. A. No. 02–1136 (D.N.J.

ciations, and Cooper was a resident at ACMC, and the Associations. *See* Compl. ¶¶ 6–11.

**3.** Balthazar alleged that in 1999, ACMC and the Community claimed that Cooper "was not one of its attending physicians, staff physicians, or residents at any time during 1998." Compl. ¶ 22. However, in 2000, the Director of Medical Education of ACMC admitted that Cooper had been a resident in 1998. *Id.* Moreover, Balthazar contends that UMDNJ stated that Cooper might have been a resident during 1998, but that UMDNJ had no record of his current address. *Id.*

**4.** More specifically, Balthazar alleges that Defendants' racketeering activities violated the mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343, because, in order to carry out their scheme to defraud her of her property, Defendants used the United States Postal Service and interstate wire systems. *See* Compl. ¶ 50.

Mar. 3, 2003). As to Balthazar's claim that Defendants violated the Federal RICO statute, I held that Balthazar had failed to allege that Defendants participated in a pattern of racketeering activity that included at least two racketeering, or predicate acts. More specifically, I held that the exchanges of correspondence between Defendants and Balthazar's attorneys could not be considered "predicate acts" under the federal RICO statute because "they constitute legitimate conduct of attorneys acting on behalf of [clients] in the course of a pending litigation." *Id.* at 11.

Moreover, as to Balthazar's claim that Defendants violated her civil rights under 42 U.S.C. § 1985, I held that "[a]lthough Balthazar has alleged that Defendants conspired against her in an attempt to injure her and deprive her of her civil rights, the Complaint does not contain a single allegation that would suggest that the alleged conspiracy was motivated by 'racial ... or otherwise class-based' animus". *Id.* at 15. Finally, I declined to exercise supplemental jurisdiction over Balthazar's remaining state law claims. *Id.* at 15–16.

In a letter dated March 12, 2003, I informed Mr. Branella that I had reviewed the recent decision of the Superior Court of New Jersey, Appellate Division, *Balthazar v. Atlantic City Med. Ctr.*, 358 N.J.Super. 13, 816 A.2d 1059 (App.Div.2003), and I placed him on notice that should he "move to amend the Complaint to assert a

RICO claim based on those same facts and circumstances described in the Appellate Division's Opinion, that I [would] carefully scrutinize any such pleading for potential Rule 11 violations." *See* Letter to Sean Robins, Esq., *Balthazar*, Civ. A. No. 02–1136 (D.N.J. Mar.12, 2003).

Shortly thereafter, on April 2, 2003, Mr. Branella, on behalf of Balthazar, moved for leave to file an amended complaint. Balthazar's Proposed Amended Complaint—a rambling narrative, which is organized and drafted so poorly that it is often difficult to comprehend—contains essentially the same federal claims as her Original Complaint, namely, that Defendants' actions violate the federal RICO statute, 18 U.S.C. § 1962, as well as 42 U.S.C. § 1985.[5] Balthazar, however, has attempted to "shore up" the Proposed Amended Complaint with additional allegations that consume approximately fifteen pages of the Proposed Amended Complaint.[6] These additional allegations, which purportedly support Balthazar's assertion that Defendants engaged in a pattern of racketeering activity, comprise the following three categories of claims: (1) Defendants, and specifically the UMDNJ, concealed the fact that Cooper, a resident physician employed by UMDNJ, was not licensed in the State of New Jersey in violation of the requirements of the American Osteopathic Association ("AOA"), *see* Proposed Am. Compl. ¶ 79(d)–(e);[7] (2) Defendants engaged in a

---

**5.** Balthazar also maintains that Defendants' actions constitute fraud, deceit, and misrepresentation in violation of New Jersey common law.

**6.** Balthazar also includes four additional Defendants in her Proposed Amended Complaint. Specifically, she adds as Defendants: (1) William Frese, the Risk Management Coordinator for ACMC; (2) Harry Knorr, the Vice President of Medical Education at ACMC, and the prior Coordinator for Family Practice at UMDNJ; (3) Richard Liszewski,

D.O., Program Director for UMDNJ; and (4) David Keller, Risk Manager for UMDNJ. *See* Proposed Am. Compl. ¶¶ 6–7, 15–16.

**7.** More specifically, Balthazar maintains that the UMDNJ "offers a four-year program in General Surgery, which provides the basic requirements for eventual certification in General Surgery of the [AOA] through the American Board of Surgery." Proposed Am. Compl. ¶ 17. According to Balthazar, the UMDNJ provided her with an altered "Residency Training Program" booklet via the

pattern of activities in violation of Title XIX of the Social Security Act, 79 Stat. 343, as amended 42 U.S.C. §§ 1396, *et seq.* ("the Medicaid Act"), *see id.* ¶ 79(a), (b), (e)–(g);[8] and (3) Defendants concealed Korzeniowski's narcotics addiction, *id.* ¶ 79(f).[9] Moreover, Balthazar now claims, in addition to being deprived "maliciously and intentionally" of "due process of law," that she has been deprived of "the right to

United States Postal Service, which stated that "all candidates for residency in surgery ... shall apply for or be licensed to practice medicine and surgery in the State of New Jersey." *Id.* ¶¶ 20–21. Balthazar contends that the same booklet that the UMDNJ had sent to the AOA stated that such residents must actually "possess a New Jersey medical license." *Id.* ¶ 19. Because Cooper was not licensed in New Jersey, Balthazar alleges that the UMDNJ concealed this fact in furtherance of "a deliberate ongoing scheme to defraud Plaintiff, others similarly situated, the federal government and the several states...." *Id.* ¶ 79. Moreover, Balthazar maintains that "UMDNJ, Cooper and Lisewski each falsified certain compliance with all applicable laws, regulations and codes." *Id.* ¶ 33.

8. Balthazar makes the following allegations in support of this general claim:
 1. "Upon the advice of the ACMC and Henderson and in conjunction with Doctors [sic] Association, Plaintiff applied for Medicaid for the purpose of reimbursing her medical care costs to the providers...." Proposed Am. Compl. ¶ 42.
 2. On January 22, 1998, Defendant Henderson, in conjunction with Defendants ACMC, the Associations, "submitted Plaintiff's request for medical benefits to Medicaid and Jersey Care describing the medical necessity for the hysterectomy. These forms were submitted through the U.S. mail and/or interstate wire services and are in the exclusive control of Defendants." *Id.* ¶ 50.
 3. Federal approval was pending on January 27, 1998, the date that Henderson, Korzeniowski and Cooper performed a total abdominal hysterectomy on Balthazar. *Id.* ¶ 52.
 4. Sometime after that date, a financial counselor advised Balthazar that she must provide income and asset documentation in order to receive medical benefits. Balthazar maintains that she provided the proper information. *Id.* ¶ 53. Despite this, Balthazar contends that ACMC misrepresented to her that she had not been approved for Medicaid benefits because she had not filed the proper paperwork. *Id.* ¶ 54.
 5. As a result, Balthazar alleges that she has been improperly billed over $50,000 "for the services rendered as a result [of] the hysterectomy and subsequent complications.... These are attempts to collect an illegal debt and are regularly transmitted through the U.S. mail...." *Id.* ¶¶ 43, 55.
 6. "Defendants Henderson, Korzeniowski, DeStefano, Cooper, Doctors' Association, Association Two and/or ACMC failed to provide Medicaid with a Certificate of Medical Necessity, for the surgeries involving the ureteral repair, which is required before payment is approved." *Id.* ¶ 56. However, Balthazar maintains that "[i]n the alternative, Defendants Henderson, Korzeniowski, DeStefano, Cooper, Association One, Association Two and/or ACMC provided Medicaid with a Certificate of Medical Necessity, misrepresenting the true cause and nature of plaintiff's complications and failing to identify a responsible third party." *Id.* ¶ 57.

9. Specifically, Balthazar maintains that "[d]uring the period between March 26, 2001 and April 23, 2001, Defendant Korzeniowski illegally obtained over (400) units of Lortab, a controlled dangerous substance." Proposed Am. Compl. ¶ 59. As a result, "Korzeniowski surrendered his medical license for a minimum of (6) months and entered an in-patient treatment facility on or before May 4, 2001." *Id.* ¶ 60. Additionally, Balthazar alleges that on February 7, 2001, someone who identified himself as Korzeniowski gave a deposition in Balthazar's state medical malpractice action. *Id.* ¶ 63. However, according to Balthazar, a physician identified as Korzeniowski "appeared on television for the purpose of discussing women's health issues." *Id.* ¶ 64. Balthazar maintains that "[t]he man on television, identified as Philip A. Korzeniowski, M.D., was not the same gentleman identified as Philip A. Korzeniowski at his deposition on February 7, 2001." *Id.*

honest services and federally funded medical assistance" because Defendants have billed her in excess of $50,000.

On the same day that he filed this motion on behalf of Balthazar, I issued an Order to Show Cause as to why Mr. Branella "should not be sanctioned for violating Rule 11(b) of the Federal Rules of Civil Procedure...." Order to Show Cause, *Balthazar*, Civ. A. No. 02–1136 (D.N.J. Apr. 2, 2003). As promised, I have carefully scrutinized Balthazar's Proposed Amended Complaint for Rule 11 violations. Thereafter, the Defendants filed several additional motions: (1) Defendants, ACMC and the Community, filed a Motion for Sanctions; (2) Defendants, UMDNJ and Cooper, filed a Motion for Sanctions; (3) Defendants, ACMC and the Community, filed a Motion to Disqualify Plaintiff's Counsel; and (4) Balthazar filed a Cross-Motion to Disqualify Defendant's Counsel. Before I determine whether sanctions are warranted in this instance, however, I shall first address Balthazar's Motion for Leave to File an Amended Complaint.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 18 U.S.C. § 1964. I have considered the submissions of the parties and decided the motion on the papers without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, I shall: (1) deny Balthazar's Motion for Leave to File an Amended Complaint; (2) impose sanctions on Balthazar's counsel, Mr. Branella, pursuant to Fed.R.Civ.P. 11(b)(1); (3) order Mr. Branella to attend and complete both a course in Federal Practice and Procedure and a course in Attorney Professionalism and the Rules of Professional Conduct within twelve months from the date of this Opinion and accompanying Order; (4) require that Mr. Branella file an affidavit with this Court attesting to his attendance at and satisfactory comple-

tion of the required courses; (5) deny UMDNJ and Cooper's Motion for Sanctions; (6) deny ACMC and the Community's Motion for Sanctions; (7) dismiss ACMC and the Community's Motion to Disqualify Plaintiff's Counsel as moot; and (8) dismiss Balthazar's Motion to Disqualify Defendants' Counsel as moot.

## II. BALTHAZAR'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

### A. Legal Standards Governing Motions For Leave to Amend a Complaint Pursuant to Fed.R.Civ.P. 15

■ In general, leave to file an amended pleading "shall be freely given as justice so requires." Fed.R.Civ.P. 15(a). The United States Supreme Court has held that leave to amend under Rule 15 should be denied only in certain circumstances:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). *See also Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J.1990) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied sub nom. F.D. Rich Housing of the Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)). The United States Court of Appeals for the Third Circuit has demonstrated a strong liberality in allowing amendments under Rule 15(a) in order

to ensure that claims will be decided on the merits, rather than on legal technicalities. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir.1990); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989). Likewise, the Third Circuit has held that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978)).

## B. The Futility of Balthazar's Proposed Amended Complaint

In the various moving papers they have filed with this Court, Defendants contend that Balthazar should not be granted leave to file an amended complaint because the Proposed Amended Complaint contains futile claims that would not survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). More specifically, they maintain that Balthazar's proposed allegations would be barred under the doctrine of res judicata and the New Jersey "entire controversy doctrine." Moreover, Defendants, ACMC and the Community, argue that Balthazar has alleged a wholly separate claim under RICO—namely, that Defendants conspired to engage in Medicaid fraud. Such a claim, according to ACMC and the Community, would be barred under the two-year statute of limitations governing personal injury claims.

In response, Balthazar contends that her claims should not be precluded because she did not learn of the alleged RICO violations until her state court negligence action had been dismissed. Pl.'s Reply Br. at 10. Balthazar further argues that New Jersey's "entire controversy doctrine" is inapplicable to actions predicated upon federal questions. *Id.* at 9. Finally, Balthazar maintains that because the statute of limitations governing civil RICO claims is four years, her claims are not time-barred.

### 1. The Doctrines of Res Judicata and *Rooker–Feldman*

In light of the Appellate Division's holding in the State Court case, I agree with Defendants that under the doctrine of res judicata, Balthazar's civil RICO and § 1985 claims are futile because they are merely a recasting of Balthazar's previously adjudicated state court claims. Moreover, because I also find that Balthazar's civil RICO claims are "inextricably intertwined" with the claims she brought in state court, I now conclude that I lack subject matter jurisdiction to consider them under the *Rooker–Feldman* Doctrine.

#### (a) *Res Judicata*

"When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment. . . ." *Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 461 (3d Cir.1996) (citing *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir.1993)). Pursuant to 28 U.S.C. § 1738,[10] a federal

---

**10.** 28 U.S.C. § 1738 provides, in relevant part:

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with

a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

court must give a state court judgment the same effect as the courts of the state which rendered the judgment. *See Assisted Living Assoc. of Moorestown v. Moorestown Twp.*, 996 F.Supp. 409, 429 (D.N.J.1998). Res judicata bars relitigation by a party of a cause of action or issue that has already been determined on the merits by a court of competent jurisdiction. *See Velasquez v. Franz*, 123 N.J. 498, 589 A.2d 143 (1991). In order for *res judicata* to apply, there must be a valid, final judgment on the merits in the prior action, the parties in the second action must be identical to, or in privity with, those in the first action, and the claim in the subsequent action must arise out of the same transaction or occurrence as the claim in the first action. *See Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592 (1991).[11]

### (b) *Rooker–Feldman*

■ The *Rooker–Feldman* Doctrine generally prohibits lower federal courts from reviewing final judgments of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). "A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and may be raised at any time by either party or *sua sponte* by the court." *Moccio v. N.Y. State Office of Ct. Admin.*, 95 F.3d 195, 198 (2d Cir.1996); *see Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987) (holding that a "lack of subject matter jurisdiction voids any de-

cree entered in a federal court and the continuation of litigation in a federal court without jurisdiction would be futile"), *cert. dismissed*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988).

■ According to the *Rooker–Feldman* Doctrine, a United States District Court may not review the judgment of a state court of any level. *See E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir.1997). This principle extends to constitutional claims which are "inextricably intertwined" with a state court's decision. *See FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996).

■ At its heart, the *Rooker–Feldman* Doctrine prohibits federal courts, other than the United States Supreme Court, from hearing any case which "is a functional equivalent of an appeal from a state court judgment." *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 491 (3d Cir.), *cert. denied*, 522 U.S. 850, 118 S.Ct. 139, 139 L.Ed.2d 87 (1997). Therefore, the Doctrine applies "when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." *FOCUS*, 75 F.3d at 840.

In addition, a federal plaintiff "may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161, 1170 (D.N.J.1996), *aff'd*, 118 F.3d 1575 (3d Cir.1997). Nor can a federal

---

28 U.S.C. § 1738 (2003).

**11.** Because this Court has held that New Jersey's entire controversy doctrine does not "bar a judgment rendered by a federal court in a case where jurisdiction was premised upon a federal question," I shall not consider it here. *See Morris v. Paul Revere Ins. Group,*

986 F.Supp. 872, 885 (D.N.J.1997) (Orlofsky, J.) (citing *Fioriglio v. City of Atlantic City*, 963 F.Supp. 415, 424 (D.N.J.1997)) ("Uniform authority dictates that federal law governs the issue and claim preclusion effects of a federal judgment in a federal question case.").

plaintiff "be allowed to escape *Rooker–Feldman* by raising a new constitutional theory in federal court" where there was a full and fair opportunity to litigate such a claim in state court. *See Valenti v. Mitchell*, 962 F.2d 288, 298 (3d Cir.1992); *Guarino v. Larsen*, 11 F.3d 1151, 1157 (3d Cir. 1993).

#### (c) *Discussion*

■ Even if asserted under the auspices of a federal statute, Balthazar is barred by res judicata from asserting the same claims that were adjudicated in the state court. Here, the elements of res judicata are satisfied. First, the Appellate Division's judgment—that there was no evidence that Defendants fraudulently concealed their alleged medical malpractice—is valid, final, and on the merits. Second, the parties in Balthazar's federal action are identical to those named in the state action.[12] Finally, Balthazar advances the same allegations in her Proposed Amended Complaint that she litigated in the state court proceeding. Specifically, Balthazar contends that Korzeniowski and Cooper, rather than Henderson, performed the hysterectomy, and Defendants concealed that fact in "fraudulent operative reports" and "medical records with forged signatures." Proposed Am. Compl. at ¶¶ 70–71. Similarly, the federal claims in Balthazar's Proposed Amended Complaint are "inextricably intertwined" with Balthazar's state claim that Defendants perpetrated a fraud upon her in order to conceal their alleged medical malpractice.

In *Sutton v. Sutton*, 71 F.Supp.2d 383 (D.N.J.1999), my colleague, the Honorable Jerome B. Simandle, held that the doctrine of res judicata barred Plaintiff's federal

civil RICO claims that were simply a "rehash" of claims previously adjudicated in federal and state court. Moreover, Judge Simandle held that he lacked jurisdiction to hear those claims under the *Rooker–Feldman* Doctrine. In so holding, Judge Simandle determined that Plaintiff was attempting to "trump[ ] up federal jurisdiction over state law claims for strategic reasons." *Id.* at 391. Judge Simandle analyzed the plaintiff's efforts in *Sutton* as follows:

> Looking through his artful pleading to the substance of the allegations themselves, it is clear that plaintiff continues to express his distress over the accounting and distribution of his father's estate. Plaintiff alleges one problem after another with the legality and propriety of the accounting of the Estate, including alleged wrongful handling of a wrongful death suit, a supposedly fraudulent consent order, and alleged improper approval of the liquor license transfer as a part of the Estate, and he states that defendants' representations to the various courts throughout the years that the accounting was proper constituted fraud perpetrated through the filing of false statements in briefs through the mail system. This is not a RICO claim; it is, once again, an attempt to get federal review of the handling of the Estate in a circumstance where each essential component of the "new" federal claim was previously adjudicated adverse to plaintiff in the courts of New Jersey.

*Id.* at 392.

Like the plaintiff in *Sutton*, Balthazar is dissatisfied with the dismissal of her state court claims. As a result of this dissatis-

---

12. Balthazar names the same Defendants in her federal claim—ACMC, the Community, Henderson, DeStefano, Feldman, Korzeniowski, the Associations, UMDNJ, and Cooper—as she did in the Complaint she filed in the Superior Court of New Jersey, Law Division. *See* Compl., *Balthazar v. Atlantic City Medical Ctr. et al.*, No. L–4527–99 (N.J.Super.Ct. Law Div. June 21, 1999).

faction, she has simply recast her state law claims as violations of federal civil RICO and § 1985. Her efforts, however, are unavailing. Every allegation she advances in the Proposed Amended Complaint either arises from or is "inextricably intertwined" with the purported medical malpractice that she believes was committed by Henderson, Korzeniowski, and Cooper, as well as the alleged fraudulent concealment of that act.

For example, Balthazar contends that Henderson, Korzeniowski, and Cooper gave false testimony in depositions regarding who performed the surgery and whether the ureter had been cut. Proposed Am. Compl. ¶¶ 72–77. These allegations, however, are predicated upon a finding that Korenziowski and/or Cooper performed the hysterectomy on Balthazar, and that Henderson fraudulently misrepresented that fact in the original and redictated operative reports.

In addition, Balthazar alleges that Defendants concealed the fact that Cooper was not licensed in the State of New Jersey in violation of the requirements, *see* Proposed Am. Compl. ¶¶ 17–37, as well as participated in a scheme to defraud her by concealing Korzeniowski's narcotics addiction, *see id.* ¶¶ 61–64.[13] By advancing such allegations, Balthazar has made a thinly veiled attempt to shed unfavorable light on the individual she believes committed medical malpractice upon her, and to provide support for her allegation that all named Defendants participated in a conspiracy to conceal that malpractice. Thus, in order for me to determine that these allegations have any relevance to Balthazar's alleged injuries, I would have to review the decision of the Appellate Division, and find that decision to be erroneous. As explained above, the *Rooker–Feldman* Doctrine clearly bars my review of the state court's decision in this court.

### 2. Balthazar Has Failed to Allege a Civil RICO Claims

To remove all doubt that Balthazar's RICO claims under 18 U.S.C. § 1962 are indeed futile, I shall now address those claims on their merits. From what I can discern from the Proposed Amended Complaint—which as I have mentioned is hardly a model of organization, clarity, or draftsmanship—Balthazar has essentially alleged two separate claims of civil RICO violation under 18 U.S.C. § 1962:(1) Defendants participated in a fraudulent scheme to impede her from litigating her medical malpractice and fraud claims in state court; and (2) Defendants, ACMC, Henderson, and the Associations, engaged in a pattern of activities violative of the Medicaid Act. In both of these claims, Balthazar has alleged that Defendants participated in predicate acts in violation of the mail fraud statute, 18 U.S.C. § 1341.

### (a) *Legal Standards Governing Civil RICO Claims*

Congress enacted the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962,[14] or RICO as it is more

---

**13.** Although Balthazar contends that this conduct has somehow deprived her of "due process and equal protection," and has prevented her ability "to obtain federal funded medical assistance for her outstanding medical bills," *see id.* ¶ 39, these allegations have absolutely no relevance to any claim that Balthazar has somehow been deprived of medical benefits. *See Sutton,* 71 F.Supp.2d at 391 ("[A] claim may be dismissed on jurisdictional grounds where it is immaterial and made solely to attain jurisdiction.") (quoting *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

**14.** 18 U.S.C. § 1962 provides, in pertinent part:

 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of

commonly known, in an attempt to ferret out organized crime in the United States. The federal civil RICO statute provides for treble damages where an enterprise is involved in a pattern of racketeering activity. The Senate Report explained that: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969). *See also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

To have standing to assert a RICO claim, an individual must show that: (1) he or she has been injured in his or her business or property; and (2) the injury was proximately caused by a violation of 18 U.S.C. § 1962. *See Mruz v. Caring, Inc.*, 991 F.Supp. 701, 711 (D.N.J.1998) (Orlofsky, J.). "Standing to assert RICO claims requires that the alleged RICO violation

> which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of . . . this section.
> 18 U.S.C.1962(c)–(d).

15. What constitutes a "pattern" of racketeering activity has been the subject of much debate over the last two decades. Without providing further clarity, the RICO statute requires a "pattern" to include the commission of at least two predicate acts over a ten-year period. *See* 18 U.S.C. § 1961(5). Providing its most comprehensive guidance to date, the Supreme Court in *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), held that in order to establish a "pattern of racketeering activity" under RICO, a plaintiff must satisfy both a "relatedness" requirement and a "continuity" requirement. *Id.* at 239, 109

proximately caused a plaintiff's injury—i.e., the violation is not too remote from the injury." *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 443 (3d Cir.2000) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

Once standing is established, a plaintiff must advance four separate elements in order to state a cause of action under RICO: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendants were employed by or associated with the enterprise; (3) that defendants participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendants participated through a "pattern" of racketeering activity that included at least two racketeering acts. *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir.1999) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985)). *See also Mundy v. City of Phila.*, Civ. A. No. 00–1627, 2000 WL 1912727, *3 (E.D.Pa.2000).[15]

S.Ct. 2893 ("[T]o prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.") *See also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (holding that in order to establish a "pattern," a nexus must exist between criminal acts); *Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir.1995); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir.1991).

The Supreme Court in *H.J.* explained that predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, *and* that they amount to or pose a threat of continued criminal activity." *Id.* Moreover, the Court determined that "continuity" can be established through related predicate acts in furtherance of either multiple criminal schemes or a single criminal scheme that "constitute[s] or present[s] a threat of long-term continuous criminal activity." *Kehr Packages, Inc.*, 926 F.2d at 1412 (citing *H.J.*, 492 U.S. at 240, 109 S.Ct. 2893).

When a plaintiff alleges predicate acts of mail fraud in violation of 18 U.S.C. § 1341—as is the case here—he or she must establish: (1) a scheme to defraud; and (2) the use of the mail in furtherance of that scheme. 18 U.S.C. § 1341; *United States v. Dreer*, 457 F.2d 31 (3d Cir.1972). The Third Circuit has observed that "the actual violation is the mailing, although the mailing must relate to the underlying fraudulent scheme." *Id.* "Moreover, each mailing that is 'incident to an essential part of the scheme' constitutes a new violation." *Id.* (quoting *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954)).

> The mailing element is not very helpful in examining the sufficiency of a RICO pattern allegation. The relatedness test will nearly always be satisfied in cases alleging at least two acts of mail fraud stemming from the same fraudulent transaction—by definition the acts are related to the same "scheme or artifice to defraud." But the continuity test requires us to look beyond the mailings and examine the underlying scheme or artifice. Although the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis.

*Id.* at 1414.

With these standards in mind, I turn to address whether Balthazar has sufficiently alleged a claim under civil RICO.

### (b) *Balthazar's Claim that Defendants Impeded Her Ability to Litigate Her State Court Claims*

 In her moving papers, Balthazar contends that Defendants perpetrated an "extrinsic fraud" on her "so as to prevent [her] from presenting all of her case to the court." Pl.'s Reply Br. at 19. Thus, according to Balthazar, the judgment of the state court is subject to collateral attack. Because I find that any injury Balthazar has sustained as a result of the outcome of the state court proceedings has been the result of her own counsel's legal malpractice, rather than any alleged fraudulent scheme of the Defendants, Balthazar lacks standing to bring a claim under civil RICO.

As I previously noted, in order to demonstrate standing to bring a RICO claim, Balthazar must allege that: (1) she has been injured in her business or property; and (2) the injury was by reason of the RICO violation. *See Mruz v. Caring, Inc.*, 991 F.Supp. at 711. According to Balthazar, she has been injured because, in addition to being billed $50,000 for medical procedures, she has been denied "due process of law in that Defendants intentionally sought to pervert the administration of justice." *See* Proposed Am. Compl. ¶ 80. However, inasmuch as Balthazar has been injured in her failed pursuit of medical malpractice claims in state court, she cannot attribute that injury to the conduct of the Defendants. Even if—as Balthazar alleges—that Cooper, an unqualified resi-

---

The Court further described "continuity" as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893. A plaintiff alleging closed-ended continuity must demonstrate "a series of related predicates extending over a substantial period of time." *Id.* "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement...." *Id.* Open-ended continuity, on the other hand, refers to "conduct that by its nature projects into the future with a threat of repetition." *Tabas*, 47 F.3d at 1292. For purposes of continuity, a court must look to the underlying scheme rather than to the predicate acts themselves. *Kehr*, 926 F.2d at 1414.

dent, and/or Korzeniowski, a narcotics addict, did indeed transect Balthazar's ureter during the January 27, 1998 hysterectomy, and thereafter all Defendants participated in a conspiracy to impede Balthazar's attempts to bring a claim of medical malpractice in state court, these actions are not the proximate cause of her alleged injuries. Instead, the principal cause of Balthazar's inability to litigate her claims in state court is the failure of her counsel, Mr. Branella, to file the required Affidavits of Merit, pursuant to N.J. Stat. Ann. §§ 2A:53A–26, *et seq.* *See* Counsel's Resp. to Defs.' Mot. to Disqualify Pl.'s Counsel & Cross–Mot. to Disqualify Defs.' Counsel at 4 ("[Mr. Branella] has readily admitted he did not file an Affidavit of Merit and did so in open court. . . .").

### (c) *Balthazar's Claim that Defendants Defrauded Her of Medicaid Benefits*

■ Finally, although Balthazar contends that Defendants fraudulently impeded her "ability to obtain federally funded medical assistance for her outstanding medical bills" in violation of the Medicaid Act, *see* Proposed Am. Compl. ¶ 39, she has failed to advance a sufficient factual basis for that claim. The following four allegations comprise the crux of Balthazar's purported "Medicaid conspiracy:" (1) Defendants, namely ACMC, Henderson, and the Associations, encouraged her to

apply for Medicaid benefits and advised her to submit certain documents concerning her income and assets; (2) after her various medical procedures, ACMC informed her that because Medicaid had not received certain papers, she had not been approved for benefits; (3) ACMC either failed "to provide Medicaid with a Certificate of Necessity, for surgeries involving the ureteral repair," or provided a Certificate of Necessity with material misrepresentations; and (4) ACMC and the Associations billed her in excess of $50,000 from February, 1998 to December, 1998.[16]

Even assuming the truth of these allegations, I find that Balthazar has not pled the necessary elements of mail fraud. Specifically, Balthazar has failed to establish that ACMC, Henderson, and the Associations participated in a scheme to defraud her or others similarly situated. Fraud, by definition, is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her injury." Black's Law Dictionary 267 (Pocket Ed.1999). *See also Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 411 (3d Cir.2003) (noting that the elements of common law fraud include: (1) a misrepresentation to the plaintiff; (2) detrimental reliance; and (3) cognizable damages).

Fed.R.Civ.P. 9(b) requires a plaintiff to plead fraud with particularity. *See Seville*

---

**16..** Balthazar baldly maintains that these acts violate the Medicaid Act without explaining how or why they do. The Medicaid Act authorizes the federal government to transfer large sums of money to the States to help finance medical care for the indigent. In return for federal funding, the Act requires participating states "to provide financial assistance to the 'categorically needy' with respect to five general areas of medical treatment: (1) inpatient hospital services, (2) outpatient hospital services, (3) other laboratory and X-ray services, (4) skilled nursing facilities services, periodic screening and diagnosis of children, and family planning ser-

vices, and (5) services of physicians." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (citing 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5)). Because the Medicaid Act governs the relationship between the federal government and the states, I fail to see how it has any relevance to Balthazar's allegations that private entities and individuals fraudulently deprived her of benefits. Balthazar may have intended to allege that Defendants committed Medicaid fraud under 42 U.S.C. § 1320a–7b, but her Proposed Amended Complaint does not assert such an allegation.

*Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). This requirement is "particularly important in civil RICO pleadings in which the predicate racketeering acts are critical to the sufficiency of the RICO claim." *Data Comm Communications, Inc. v. The Caramon Grp., Inc.,* Civ. A. No. 97–0735, 1997 WL 792998, *6 (E.D.Pa. Nov. 26, 1997) (quoting *Alfaro v. E.F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1117–18 (E.D.Pa.1985)).

Balthazar has hardly pled fraud with particularity as required under Fed. R.Civ.P. 9(b). In fact, Balthazar's allegations simply defy logic. It is implausible that ACMC and the Associations would purposely avoid legitimately collecting medical expenses from Medicaid and/or Jersey Care in order to burden Balthazar, an admittedly indigent patient, with a huge debt as part of some grand scheme to cover up alleged medical malpractice. The fact that Balthazar has included such illogical, preposterous allegations in the Proposed Amended Complaint only serves to underscore the weakness of her claims.

Nevertheless, I must look beyond the implausible, and consider the merits of Balthazar's claim. First, Balthazar claims that she relied on Defendants' advice to apply for Medicaid benefits, but she does not allege that this advice amounted to a "misrepresentation." Moreover, she does not maintain that she relied on Defendants' advice to her detriment. Had Defendants not advised her to apply for Medicaid benefits, Balthazar would have been billed in the same amount for the services she did in fact receive.

Second, Balthazar contends that Defendants made a material misrepresentation by informing her that she had not been approved for Medicaid benefits. Balthazar has not, however, explained the nature of the misrepresentation, nor has she claimed

detrimental reliance. Had Balthazar, for example, alleged that Defendants told her that she had been denied Medicaid benefits when, in fact, she had been approved, and then billed her in excess of $50,000, Balthazar would have sufficiently pled a violation of the mail fraud statute, 18 U.S.C. § 1341. Balthazar, however, advances no such allegations. *See Palmer v. Nationwide Mut. Ins. Co.,* 945 F.2d 1371, 1374–75 (6th Cir.1991) (holding that "vague and conclusory [allegations] about fraud or concealment or false statements" that "could hardly be said to be criminal activity" cannot form the basis for predicate acts under civil RICO).

Finally, if Defendants did indeed fail to provide a Certificate of Necessity for several of Balthazar's medical procedures, Balthazar has, at most, stated a claim of negligence, not fraud. Accordingly, I find that Balthazar has failed to allege that Defendants, ACMC, Henderson, and the Associates participated in a predicate act of mail fraud.

### 3. Balthazar Has Failed to State a Claim under 42 U.S.C. § 1985

To the extent that Balthazar alleges that these same acts were predicated on a "racial, or perhaps otherwise class-based, invidiously discriminatory animus" in violation of 42 U.S.C. § 1985, *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), Balthazar has failed to cure the deficiencies of her Original Complaint.

As I explained in my unpublished opinion dated March 3, 2003, *Balthazar,* Civ. A. No. 02–1136 (D.N.J. Oct. 3, 2003), to state a claim under § 1985(3), the plaintiff must allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any persons or class of persons of the equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an

injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253–54 (3d Cir.1999) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997)).

Here, Balthazar has alleged that: (1) she is an indigent, African–American woman; and (2) Defendants conspired against her in an attempt to deprive her of Medicaid benefits. The Proposed Amended Complaint, like the Original Complaint, does not provide a factual basis for her claims that the alleged conspiracy was motivated by "racial ... or otherwise class-based" animus. Stated differently, Balthazar has failed to allege that Defendants have deprived her of any right or privilege because she is African–American.

In sum, Balthazar's federal claims brought under civil RICO and § 1985 are barred under the doctrines of res judicata and *Rooker–Feldman*. Alternatively, Balthazar has failed to state a cause of action under civil RICO and § 1985. Accordingly, I shall deny Balthazar's Motion for Leave to File an Amended Complaint.

## III. SANCTIONS PURSUANT TO FED. R. CIV. P. 11

### A. Legal Standard Governing Motions for Sanctions Pursuant to Fed. R.Civ.P. 11

On April 2, 2003, I entered an Order to Show Cause as to why sanctions should not be imposed against Balthazar's counsel, Mr. Branella, based on his recent filing of a Motion for Leave to Amend Plaintiff's Complaint. On April 28, 2003 and April 30, 2003, respectively, Defendants, UMDNJ and Cooper, and Defendants, ACMC and the Community, also filed Motions for Sanctions pursuant to Fed. R. Civ. 11.[17]

As I stated in *Thomason v. Lehrer*, 183 F.R.D. 161, 170 (D.N.J.1998) (Orlofsky, J.), *aff'd*, 189 F.3d 465 (3d Cir. 1999), *abrogated on other grounds by U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir.2002), "[a] District Court has the authority and, indeed, the duty to examine allegations that an attorney appearing before the court 'has violated his moral and ethical responsibility[,]' and to fashion an appropriate remedy, if warranted". *Id.* (quoting *Richardson v. Hamilton Intern Corp.*, 469 F.2d 1382, 1385 (3d Cir.1972), and citing Fed.R.Civ.P. 11(c); 28 U.S.C. § 1927). Courts have been given broad discretion "to control the conduct of those who appear before them[,]" with "an arsenal of sanctions they can impose for unethical behavior." *Id.* (quoting *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996)).

Rule 11 of the Federal Rules of Civil Procedure provides in relevant part as follows:

---

17. Mr. Branella contends that these motions were served on him in violation of the "Safe Harbor" provision of Rule 11. This so-called "Safe Harbor" provision of Rule 11 provides that a party filing a motion for sanctions must file such a motion separately from other motions "and shall describe the specific conduct alleged to violate subdivision (b)." Fed. R.Civ.P. 11(c)(1)(A). Moreover, "[i]t shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged ... claim ... is not withdrawn or appropriately corrected...." *Id.* Although I am mindful that Defendants did file their respective motions with the Court without providing Mr. Branella 21 days to withdraw the Motion for Leave to File an Amended Complaint, I find that, in light of the Court's own Order to Show Cause filed weeks prior, Mr. Branella's allegation that Defendants' violation of the "Safe Harbor" provision of Rule 11 is irrelevant because of this Court's issuance of an Order to Show Cause which is not governed by the "Safe Harbor" provision of Rule 11.

593

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... [that] (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for their violation....

Fed.R.Civ.P. 11(b) & (c). Moreover, "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause as to why it has not violated subdivision (b) with respect thereto." Fed.R.Civ.P. 11(c)(1)(B).

In practice, Rule 11 "requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim." *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers,* 855 F.2d 1080, 1090 (3d Cir.1988) (footnote omitted); *see also Carlino v. Gloucester City High School,* 57 F.Supp.2d 1, 37 (D.N.J.1999) (Orlofsky, J.),

*aff'd,* 44 Fed.Appx. 599, No. 00–5262, 2002 WL 1877011 (3d Cir. Aug.14, 2002). In construing Rule 11, the United States Court of Appeals for the Third Circuit has explained that this Rule "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad admonition to 'stop, look, and listen.'" *Brunner v. AlliedSignal, Inc.,* 198 F.R.D. 612, 616 (D.N.J.2001) (quoting *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986)).

According to the Third Circuit, "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir.1991) (*citing Bus. Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 546–47, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991)), *cert. denied sub. nom. Altran Corp. v. Ford Motor Co.,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). The Third Circuit has defined "reasonableness" in the context of Rule 11 as "an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in fact and law." *Id.* (citation omitted). A finding of "bad faith is not required." *Martin v. Brown,* 63 F.3d 1252, 1264 (3d Cir.1995). Thus, the standards under Rule 11 "eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed.R.Civ.P. 11, adv. cmte. notes.

To comply with Rule 11, counsel is required to conduct "a reasonable inquiry into both the facts and the law supporting a particular pleading." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 187 n. 7 (3d Cir.2002); *Schering Corp. v. Vitarine Pharm., Inc.,* 889 F.2d 490, 496 (3d Cir. 1989). "At a minimum, Rule 11 requires 'unambiguously that any signer must con-

duct a reasonable inquiry or face sanctions.'" *Business Guides, Inc.*, 498 U.S. at 547, 111 S.Ct. 922. Pursuant to Rule 11, counsel who submit pleadings that are "frivolous, legally unreasonable, or without factual foundation," may appropriately be sanctioned by the court. *Slater v. Skyhawk Transp. Inc.*, 187 F.R.D. 185, 199–200 (D.N.J.1999) (Orlofsky, J.). Before a court can impose sanctions, the attorney must have received "particularized" notice of the possible sanction, sufficient to inform him or her of "the 'particularized factors that he [or she] must address if he [or she] is to avoid sanctions.'" *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 100 (3d Cir.1999) (quoting *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)).

### B. Sanctions are Warranted in This Case Pursuant to Fed.R.Civ.P. 11(b)(2)

 With these legal standards in mind, the threshold question which I must decide in determining whether to impose Rule 11 sanctions is whether Balthazar's counsel, Mr. Branella, "conducted a reasonable inquiry into both the facts and the law" supporting his Motion for Leave to File an Amended Complaint, and the Proposed Amended Complaint attached thereto, which he filed on behalf of Balthazar. Specifically, I must determine whether Mr. Branella had an "objective knowledge or belief" that Balthazar's federal claims were "well-grounded in fact and law" in light of both the Appellate Division's finding of no evidence of fraud or fraudulent concealment in the state court record, and in light of my March 3, 2003 Opinion and Order

dismissing his claims for failure to state a claim upon which relief can be granted.

For the following reasons, I find that a sanction is warranted under Fed.R.Civ.P. 11(b)(2). Rule 11(b)(2) precludes the filing of papers where the claims contained therein are not "warranted by the existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." There can be little doubt—for the reasons set forth in my discussion of the futility of the Proposed Amended Complaint—that the claims which Mr. Branella advances on behalf of Balthazar in the Proposed Amended Complaint have no basis in law or fact. Indeed, Mr. Branella has blatantly disregarded my warning that, should he move for leave to amend complaint, I would carefully scrutinize any proposed amended pleading to determine if Mr. Branella was merely attempting to relitigate claims brought unsuccessfully in state court.[18] Rather, he advances the same claims in the Proposed Amended Complaint that were unequivocally rejected and decided by the Appellate Division. The following allegations in the Proposed Amended Complaint, which are by no means an exhaustive list, leave no question that Mr. Branella is seeking to relitigate identical state law claims in federal court:

(3) "All defendants knowingly agreed to conceal the fact that Cooper and Korzeniowski performed the surgery . . .," Proposed Am. Compl. ¶ 69;

(4) "Defendant Henderson redictated the Operative Report naming herself as the primary surgeon, Korzeniowski as assisting, and Cooper as ancillary personnel . . ." *Id.* ¶ 70;

---

18. *See* Letter to Sean Robins, Esq., *Balthazar*, Civ. A. No. 02–1136 (D.N.J. Mar. 12, 2003) (placing Mr. Branella on notice that should he "move to amend the Complaint to assert a RICO claim based on those same facts and circumstances described in the Appellate Division's Opinion, that I [would] carefully scrutinize any such pleading for potential Rule 11 violations").

(5) "Misrepresentations regarding Plaintiff's uretal obstructions include, without limitation, the following: the existence of fraudulent operative reports, provided false and fraudulent records with forged signatures ...," *Id.* ¶ 71;

(6) "On February 1, 2001, Henderson testified during her deposition, that she performed the hysterectomy from Plaintiff's left side, with Korzeniowski and Cooper assisting." *Id.* ¶ 72;

(7) "Defendants altered, destroyed, falsified and/or concealed the medical records, reports and/or bills of the Plaintiff with the intent to deceive the Plaintiff, others similarly situated, the federal government and the several States." *Id.* ¶ 137; and

(8) "The Defendants deliberately altered, destroyed, falsified and/or concealed the medical records, reports and/or bills of the Plaintiff to protect their own interests at the expense of the Plaintiff's interest." *Id.* ¶ 140.

Moreover, despite the fact that on March 3, 2002, I dismissed Balthazar's Complaint for failure to state a claim upon which relief can be granted, Mr. Branella has advanced identical claims in the Proposed Amended Complaint without curing the deficiencies. As I previously noted, Mr. Branella has failed to allege any basis for Balthazar's claim that Defendants violated either civil RICO or § 1985.

Because the claims contained in the Proposed Amended Complaint lack legal support, and in light of the fact that Mr. Branella had ample opportunity to correct the deficiencies noted in the Original Complaint, I cannot conclude that Mr. Branella

has conducted a reasonable inquiry into both the facts and the law in moving for leave to file an amended complaint. Instead, he has continued to relitigate allegations that are patently unmeritorious and frivolous. *See* Fed.R.Civ.P. 11 adv. cmte. notes (stating that litigants are subject to potential sanctions when they insist upon "a position after it is no longer tenable"). Accordingly, I find that a sanction is warranted under Fed.R.Civ.P. 11(b)(2).

Under Rule 11, the appropriate sanction is one which "is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). "The sanctions may consist of, or include, directives of a nonmonetary nature, or an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* Among the nonmonetary sanctions contemplated by the rule is to order the offending attorney to attend courses or other educational programs. *See, e.g., Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987); *Carlino,* 57 F.Supp.2d at 39; *Thomason v. Lehrer,* 182 F.R.D. 121, 131–32 (D.N.J. 1998) (Orlofsky, J.); Fed.R.Civ.P. 11 adv. cmte notes.

▆▆ I find that a nonmonetary sanction is appropriate in this case. Specifically, I shall order Mr. Branella to attend and complete two continuing legal education courses within the next twelve months.[19] One course must deal with Federal Practice and Procedure. The other course must deal with Attorney Professionalism and the Rules of Professional Conduct. Mr. Branella shall file an affidavit or decla-

---

**19.** These courses must be sponsored or offered by a law school accredited by the American Bar Association or a reputable provider of continuing legal education.

ration with this Court attesting to his attendance at and satisfactory completion of the required courses. As a result of attending these continuing legal education courses, hopefully Mr. Branella will become familiar with the legal principles that have apparently escaped him during the course of this litigation.

In sum, I find that Mr. Branella violated Rule 11(b)(2) of the Federal Rules of Civil Procedure, and I shall impose the nonmonetary sanction described above pursuant to the Order to Show Cause issued by this Court on April 2, 2003. Because the Defendants did not comply with the "Safe Harbor" provision of Rule 11, I shall deny their motions for sanctions.

## IV. CROSS–MOTIONS TO DISQUALIFY COUNSEL

As a result of my rulings in this Opinion and the accompanying Order, this case is now concluded. Accordingly, I shall dismiss the parties' cross motions to disqualify their respective counsel as moot. Nevertheless, I would be remiss if I did not point out the inherent conflict of interest which exists between Balthazar and her counsel, Mr. Branella, as a result of Mr. Branella's admitted legal malpractice during the state proceedings.[20] First, Mr. Branella's interest in avoiding a legal malpractice action is manifestly adverse to Balthazar's interest in pursuing such a claim against him. Thus, in the present litigation, it is unclear whether Mr. Branella is representing Balthazar, or attempting to avoid a malpractice claim against him.

Recognizing this apparent conflict, Mr. Branella has filed an affidavit signed by Balthazar. See 4/15/03 Aff. of Enez Balthazar. In that affidavit, Balthazar states that she understands that her case was dismissed in state court as the result of Mr. Branella's failure to file an Affidavit of Merit, pursuant to N.J. Stat. Ann. §§ 2A:53A–26, et seq. However, she maintains that she does not wish to pursue a legal malpractice claim against him. Id. ¶¶ 9, 11.

The validity of this so-called "affidavit" and purported "client waiver" is questionable at best. First, the affidavit lacks the seal of a Notary Public, and is therefore an unsworn and unreliable statement. Moreover, it is unclear on this record that Balthazar, an admitted illiterate, can knowingly and intelligently waive her right to pursue a legal malpractice claim against Mr. Branella, when it is Mr. Branella who is representing her in this action. Because Mr. Branella does not contend that Balthazar sought independent legal advice, I can only assume that Mr. Branella prepared this "affidavit" on her behalf and informed her of the statements contained therein. Under these circumstances, I have grave reservations that Mr. Branella, who has an interest in avoiding a legal malpractice lawsuit, can represent Balthazar with the independence and zeal required by the Rules of Professional Conduct.

## V. CONCLUSION

For the reasons set forth above, I shall: (1) deny Balthazar's Motion for Leave to File an Amended Complaint; (2) impose sanctions on Balthazar's counsel, Mr. Branella, pursuant to Fed.R.Civ.P. 11(b)(2); (3) order Mr. Branella to attend and complete both a course in Federal Practice and Procedure and a course in Attorney Professionalism and the Rules of Professional Conduct within twelve months from the

---

**20.** See Counsel's Resp. to Defs.' Mot. to Disqualify Pl.'s Counsel & Cross–Mot. to Disqualify Defs.' Counsel at 4 ("[Mr. Branella] has readily admitted he did not file an Affidavit of Merit and did so in open court. . . . ");.

date of this Opinion and accompanying Order; (4) require that Mr. Branella file an affidavit with this Court attesting to his attendance at and satisfactory completion of the required courses; (5) deny UMDNJ and Cooper's Motion for Sanctions; (6) deny ACMC and the Community's Motion for Sanctions; (7) dismiss ACMC and the Community's Motion to Disqualify Plaintiff's Counsel as moot; and (8) dismiss Balthazar's Motion to Disqualify Defendants' Counsel as moot. The Court shall enter an appropriate form of Order.

## ORDER

This matter having come before the Court on the Motion of Plaintiff, Enez Balthazar, for Leave to File an Amended Complaint, the Order to Show Cause Why Sanctions Should Not Issue Pursuant to Fed.R.Civ.P. 11(b), the Motion of the Defendants, Atlantic City Medical Center and Atlantic City Medical Center Community Health Services, for Sanctions, the Motion of Defendants, University of Medicine and Dentistry of New Jersey, School of Osteopathic Medicine and Richard Cooper, D.O., for Sanctions, the Motion of Defendants, Atlantic City Medical Center and Atlantic City Medical Center Community Health Services, to Disqualify Plaintiff's Counsel, and the Cross–Motion of Plaintiff, Enez Balthazar, to Disqualify Defendants' Counsel, Frank D. Branella, Esq., appearing on behalf of Plaintiff, Enez Balthazar, Sean Robins, Esq., GOLD, BUTKOVITZ & ROBINS, P.C., appearing on behalf of Defendants, Atlantic City Medical Center and Atlantic City Medical Center Community Health Services, Sharon K. Galpern, Esq., John A. Talvacchia, Esq., STAHL & DE-LAURENTIS, P.C., appearing on behalf of Defendants, Barbara Henderson, M.D., and Phillip Korzeniowski, M.D., Joseph A. Martin, Esq., Kerri E. Chewning, Esq., ARCHER & GREINER, P.C., appearing on behalf of Defendants, Joseph DeStefa-

no, M.D., Allan Feldman, M.D., DeStefano, Feldman & Kaufman, P.A., and DeStefano, Feldman, Kaufman & Korzeniowski, P.A., and Thomas F. Marshall, Esq., appearing on behalf of Defendants, University of Medicine and Dentistry of New Jersey, School of Osteopathic Medicine and Richard Cooper, D.O.; and,

The Court having considered the submissions of the parties without oral arguments pursuant to Fed.R.Civ.P. 78;

For the reasons set forth in the Opinion filed concurrently with this Order;

IT IS, on this 15th day of August, 2003, hereby ORDERED that:

(1) The Motion of Plaintiff, Enez Balthazar, for Leave to File an Amended Complaint is DENIED;

(2) Frank D. Branella, Esq. is sanctioned pursuant to Fed.R.Civ.P. 11(b)(2);

(3) Frank D. Branella, Esq. must attend and complete both a course in Federal Practice and Procedure and a course in Attorney Professionalism and the Rules of Professional Conduct within twelve months from the date of this Order;

(4) Frank D. Branella, Esq. must file an affidavit with this Court attesting to his attendance at and satisfactory completion of the required courses;

(5) The Motion of the Defendants, Atlantic City Medical Center and Atlantic City Medical Center Community Health Services, for Sanctions is DENIED;

(6) The Motion of Defendants, University of Medicine and Dentistry of New Jersey, School of Osteopathic Medicine and Richard Cooper, D.O., for Sanctions is DENIED;

(7) The Motion of Defendants, Atlantic City Medical Center and Atlantic

City Medical Center Community Health Services, to Disqualify Plaintiff's Counsel is DENIED AS MOOT; and

(8) The Cross–Motion of Plaintiff, Enez Balthazar, to Disqualify Defendants' Counsel is DENIED AS MOOT.